CHARLES S. WEBSTER AND ANOTHER, EXECUTORS, *vs.*
MARY ANN WIERS AND OTHERS.

A testatrix made the following bequest :—"I give to *M* all my household effects, books and papers of value, and everything the house contains; the same to be taken by him without inventory or appraisal." Held not to include a promissory note of $100, and a savings bank book with deposits of $2,500 represented by it, which belonged to the testatrix and were found among her papers in her dwelling house immediately after her death.

[Argued January 9th—decided January 25th, 1884.]

SUIT, by the executors of Lucy Churchill, for advice as to the construction of a codicil to her will; brought to the Superior Court in Hartford county.

. The testatrix died March 30th, 1883, possessed of consid-

erable real and personal estate. She left a will dated December 20th, 1877, and the codicil in question dated, November 17th, 1880. The will contained the following clause:

" 3d. I direct my executor hereinafter named, to sell, either at public or private sale at his discretion, all my estate real and personal, and, after payment of all debts and charges, including item second, divide the residue into three equal parts, of which I give one equal one-third part to the children of my deceased brother, Charles Churchill, or to their legal representatives, to be theirs, their heirs and assigns forever. I also give another one-third part to my niece Mary Ann Churchill Wiers, widow of Flavel Wiers, deceased, to be hers, her heirs and assigns forever. And I do also give the remaining one-third part unto my grand-nephew Milton M. Woodford, of Bristol, Conn., to be his, his heirs and assigns forever."

The bequest made by the codicil was as follows:

" I give and bequeath to my grand-nephew Milton M. Woodford, of Bristol, all my household effects, books and papers of value and everything the house contains, the same to be taken by him without inventory or appraisal, to be his and his heirs forever. Item 3 (first clause) of my will I hereby change so as to conform to this codicil."

The testatrix left at her decease a promissory note payable to her for the sum of one hundred dollars, signed by Charles E. Chapman, dated the 28th of August, 1877, and not endorsed; also a savings bank book containing entries of deposits to her credit in the Society for Savings at Hartford, to the amount of about $2,500 ; which note and book were found among her effects and in her dwelling-house immediately after her decease. The savings bank book and the note were the only books and papers embraced in the appraisal and inventory of the estate of the testatrix.

The complaint asked for advice as to whether the promissory note and the savings bank book with the deposits represented by the latter, passed to Milton M. Woodford under the codicil, or to the residuary legatees under the will.

The legatee Woodford was one of the executors and a party plaintiff. All other persons interested were made parties defendant.

The allegations of the complaint were admitted by the defendants, and the case was reserved for the advice of this court.

*R. Welles* and *S. P. Newell*, for M. N. Woodford.

The bequest mentions three separate classes of personal property, and it seems proper to consider each separate class in the order in which they are written in the codicil, as follows: 1. "All my household effects." 2. "All my books and papers of value." 3. "And everything the house contains."

1. "All my household effects." "The word 'effects' is more commonly used in the most extended sense, as synonymous with property or estate." 2 Red. on Wills, 101, § 6; 2 Jarman on Wills, 352. Lord MANSFIELD said, in *Hogan* v. *Jackson*, Cowp., 304, "I take *effects* to be synonymous with *worldly substance*, which means whatever can be turned to value." In *Cole* v. *Fitzgerald*, 1 Sim. & Stu., 189, it was held by LEACH, V. C., that the words "household furniture and other household effects, of or belonging to the testator's dwelling house and premises at his decease," comprised all property in the house or on the premises intended for use or consumption therein, or for ornament thereof, and that it included books, etc. 2 Wms. Exrs., 1281, 6th Am. ed. So books will pass under a bequest of " other articles of domestic use and enjoyment." *Cornewall* v. *Cornewall*, 12 Sim., 303. Articles temporarily removed from a house will be treated the same as if remaining there. *Spencer* v. *Spencer*, 21 Beav., 548; *Brooke* v. *Warwick*, 2 De Gex & Sm., 425. Also articles ordered by testator but not delivered at his death. *Field* v. *Peckett*, 29 Beav., 573. Manuscript notes of a physician bound up in volumes, were held to pass under a bequest of " all and every my books in and about my house." *Willis* v. *Custois*, 1 Beav., 189. So that by the specific legacy of " all my household effects,"

the testatrix bequeathed all her property "intended for use or consumption therein or for the ornament thereof," including all her books, if she had any, and, without reference to the fact whether they were actually in the house or temporarily absent therefrom. It was not necessary, therefore, for the testatrix to make any further bequest of "books," as that word is used in its ordinary sense and acceptation. But she does go further, which brings us to the second clause.

2. "All my books and papers of value." The clause "books and papers of value" should be read as if connected with the preceding clause by the conjunction "and," so that the words "all my" apply to this clause as well as to the preceding one. *Crichton* v. *Symes*, 3 Atk., 63. That the word "books" is here not used in its ordinary sense is evident; because, 1st, she had already disposed of such books, if she had any, by the preceding clause, as already shown. 2d. The words "of value" apply by fair construction to "books" as well as to "papers," and it appears she had no "books of value" in her possession except the bank book. At least she had none of value enough to be put upon the inventory. On the contrary, it is quite evident that she used the word "books" in a sense different from its usual signification, because, (1st,) it is coupled with the words "papers of value," which explain the meaning of "books"; both "books" and "papers of value" are terms *ejusdem generis*. The rule *noscitur sociis*, applies to "books" as it stands related to, and is explained by, "papers of value." (2d.) The plain, natural import of the words "books and papers of value" to persons of ordinary intelligence, would be that they meant notes, securities, bonds, mortgages, certificates of deposit, and bank books of money value, and not bibles, hymn-books, or books of spiritual, moral, or literary worth. *Perkins* v. *Mathes*, 49 N. Hamp., 107, 110. As it appears by the date of the note that she had it before even she made her will, and as it may be presumed from the amount of money on her bank book that it was the accumulation of years, it is probable she had both

in her mind when she used the expression, and intended to describe them by a brief phrase instead of a lengthy description. As this note and bank book are *choses in action* not embraced in the preceding clause, it follows that unless this clause operates to pass them, it can have no operation or effect whatever, and the testatrix had no intent or meaning when she wrote it. Yet it is a most important canon of interpretation that "all the words of the will are to be taken into view, and not a part of them only; as every word is employed to develope the intention of the testator, and all of them taken in connection exhibit a transcript of his mind." Per HOSMER, C. J., in *Allyn* v. *Mather*, 9 Conn., 123.

3. "And everything the house contains." If we are right in our view of the second clause, it is unnecessary to discuss this. It seems to be a sort of residuary clause to give to Woodford everything in the house that he could carry away, which was not already given by the two preceding clauses—a bequest of a particular residue. 2 Jarman on Wills, 369. If the testatrix intended, as we claim she did, to give everything actually in the house to Woodford that was portable, whether choses in action or not, then as this note and bank book were in her house at her death, the terms used will have that effect, even if this clause stood alone. *Hotham* v. *Sutton*, 15 Ves., 319, and note *b*. The words "all" and "everything" are as comprehensive terms as the English language affords. If it be claimed that the last clause must be confined to articles *ejusdem generis* with those specified in the preceding clauses, to wit: "household effects, and books and papers of value," then, as already shown, it would include books in the ordinary sense under the first clause, and books in the sense of bank books under the second clause, as well as the note. But this clause will not be so restrained if such was not the testatrix's intent, but will receive an unrestricted construction to correspond with the natural import of the comprehensive terms used. In *Arnold* v. *Arnold*, 2 Mylne & Keen, 365, Ld. COTTENHAM held "that the mere

enumeration of particular articles, followed by a general bequest, did not of necessity restrict the general bequest, because a testator often threw in such specific words, and then wound up the catalogue with some comprehensive words for the very purpose of preventing the bequest from being so restricted." 2 Jarman on Wills, 362. In *Dean* v. *Gibson*, L. R., 3 Eq., 717, Wood, V. C., said: "The strong presumption is that the testator did not mean to do only what he might have effectually done by giving the enumerated articles simply." 2 Jarman on Wills, 364. In *Michell* v. *Michell*, 5 Mad., 69, where the words of the bequest enumerated particular articles and added "and effects that he should die possessed of," Leach, V. C., held that the word "effects" was aided by the words which followed, "that he should die possessed of," and excluded its restricted sense. 2 Jarman on Wills, 361. In *Campbell* v. *Prescott*, 15 Ves., 500, there were added to the word "effects" the words "of what nature and kind soever," and it was held that this addition excluded a restrictive sense. So here, the addition of the words, "the same to be taken by him without inventory or appraisal," shows the intent of the testatrix that Woodford should have the right to take everything that the house contained at her death that he could take away, and excludes a more restrictive sense. 2 Jarman on Wills, 364; 2 Redf. on Wills, 110, 112, and notes; *Locke* v. *Noyes*, 9 N. Hamp., 430, 434; *Richmond* v. *Vanhook*, 3 Ired. Eq., 581.

*G. Collier*, contra, cited—*Popham* v. *Aylesbury*, Ambler, 68; *Chapman* v. *Hart*, 1 Ves. Sen., 271; *Brooke* v. *Turner*, 7 Sim., 671; *Fleming* v. *Brook*, 1 Sch. & Lef., 318; *Moore* v. *Moore*, 1 Brown Ch., 127; *Mann* v. *Mann's Exrs.*, 1 Johns. Ch. 231, 238; *Penniman* v. *French*, 17 Pick., 404; *Strong* v. *White*, 19 Conn., 238, 246.

Park, C. J. The question presented by this case is with regard to the construction to be given to a clause of the codicil to the will of Lucy Churchill, which is as follows:—

"I give and bequeath to my grand-nephew, Milton M. Woodford, all my household effects, books and papers of value, and everything the house contains, the same to be taken by him without inventory or appraisal, to be his and his heirs' forever."

At the time of her death the testatrix had $2,500 in the savings bank of the Society for Savings in the city of Hartford, and her bank book showing the amount of her deposits there was found among her effects in her dwelling house immediately after her death. She had also a promissory note given by one Chapman for $100, which was also found among her effects at the same time. The note and bank book were the only articles belonging to the class of "books and papers" which were inventoried and appraised. The codicil was executed in November, 1880. By the original will, which was executed in 1877, the residue of the estate of the testatrix was to be divided into three equal parts, one of which was given to the children of her deceased brother Charles, one to her niece Mary Ann Wiers, and one to Milton M. Woodford, the legatee under the codicil.

The executors ask the advice of the Superior Court as to the construction to be put upon the clause of the codicil which has been quoted, and particularly as to whether Milton M. Woodford, as legatee under the codicil, is entitled to the Chapman note and to the savings bank book, with the deposits represented by the latter, or whether they pass by the residuary clause of the original will; Woodford the legatee under the codicil being one of the executors of the will and all other parties interested being made defendants. The Superior Court has reserved the question for the advice of this court.

If they pass to Woodford under the codicil they of course do so as coming within the terms of the clause "all my household effects, books and papers of value, and every thing the house contains." But it seems clear to us that the articles here intended are strictly household effects, such articles as were kept for household and family use. It is true that she uses, at the close of the bequest, the sweep-

ing expression, " and every thing the house contains." But we do not think that it was intended to extend the effect of what had gone before. She must have intended merely to make sure that nothing of her household effects should fail to come within the bequest. It would be a very unnatural thing that a testator should describe such property, and of such value, merely as household effects and as a part of all the house contained, or even as books and papers of value. It is hardly credible that a particular allusion to them should not have been made if she had intended to embrace them in the bequest.

We are of opinion that the note and savings bank book, with the deposits represented by the latter, did not pass by the codicil to Milton M. Woodford, but that they became a part of the residue provided for in the original will; and we so advise the Superior Court.

In this opinion the other judges concurred.