[No. 23. First Appellate District.—August 31, 1905.]

In the Matter of the Estate of ALBERT JEFFREYS, Deceased. WILLIAM M. ABBOTT, Appellant, v. FRANK H. KERRIGAN et al., Respondents.

WILL—BEQUEST OF BOOKS AND PAPERS—BANK-BOOKS EXCLUDED.— Where a testator leaves among his effects a large number of law and other ordinary books, a bequest of ''all my books and papers'' will not be construed to include bank-books or the moneys on deposit represented thereby, especially where such an interpretation would render of no effect other provisions of the will.

APPEAL from a decree of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

L. A. Gibbons, for Appellant.

J. J. Lermen, and Charles W. Slack, for Respondents.

HALL, J.—This is an appeal by William M. Abbott from a decree of distribution, and the only question involved is as to the proper construction of the will of Albert Jeffreys, deceased.

The will is holographic and is as follows:—

"My will.     April 10th, 1902.     I owe William M. Abbott $600 which I wish paid.

"To the Rev. M. D. Connolly I give the sum of $1,000.

"To William M. Abbott I give all my books and papers.

"To Eugenie M. St. Paul I give the rest and residue of my estate of every kind and nature.

[Then follows a statement naming two persons to whom he leaves nothing, a provision as to persons who may claim to be heirs, the appointment of executors, a revocation of former wills, waiver of bonds, and a provision for sale of real estate without order of court.]

"ALBERT JEFFREYS."

The appellant contends that under the clause "To William M. Abbott I give all my books and papers" there passed to him fourteen certain bank-books, and in consequence the moneys on deposit represented by such books.  The court below ordered distribution of a large number of books, consisting mostly of law-books, a promissory note, and a certificate for one hundred and forty-three shares of stock to appellant; one thousand dollars to Rev. Connolly; and the residue of the estate, consisting of an interest in four parcels of land, one typewriter, and $1,661.97, to Eugenie M. Roberts, described in the will as Eugenie M. St. Paul, but since married to Roberts.

The money—to wit, the $2,661.97—thus distributed was what was left of the deposits represented by the bank-books. At the death of the testator the fourteen bank-books represented deposits in various banks to the credit of testator, aggregating upwards of eighty-seven hundred dollars.  If the contention of appellant be correct this entire sum of money passed to him, and should not have been charged with the payment either of expenses of administration, debts, or the legacy to Connolly, until the property given to the residuary legatee had been exhausted.  (Civ. Code, secs. 1359, 1360.)

It must be confessed that a bank-book is a book, and yet the average mind, we think, would not ordinarily understand that by a bequest of "all my books" a testator meant to bequeath money in bank.  Appellant himself does not seem to have realized the full possibilities of his case until late in the

proceedings of this estate, for he seems to have remained silent while the executor appropriated upwards of six thousand dollars out of the bank deposits to the payment of expenses of administration and debts.     There was left for distribution but $2,661 out of the $8,700 on deposit at the death of the testator; and as we have shown, if appellant's contention be correct, recourse should have first been had to the real estate and typewriter, which passed under the residuary clause, for the payment of all expenses and debts.

While bequests of books are quite common, and many persons leave bank-books among their effects, we have been cited to no case, and we know of none, where a court has held that under a bequest of "books," or "all my books," bank-books, and in consequence bank deposits, passed.

We are cited to *Perkins* v. *Mathes*, 49 N. H. 107, as sustaining appellant's contention.     In that case it was held that under "all my books and papers of every description" a promissory note passed.     Unless this construction had been adopted nothing would have passed to the particular legatee save a Bible, some ordinary books, and a manuscript, all of very little pecuniary value.

In the companion case (*Mathes* v. *Smart*, 51 N. H. 438), construing the same words in the same will, it was held that two bank-books showing deposits in the Newmarket Bank did not pass, and the court said: "In *Perkins* v. *Mathes* we were influenced not a little by the consideration that, unless the promissory notes were to be regarded as comprehended in the bequest of books and papers, there was in reality no bequest of practical value to the plaintiff." Indeed, in *Perkins* v. *Mathes* the court said, "A testator is to be considered as intending a benefit to the object of his gift."

In *Webster* v. *Wiers*, 51 Conn. 569, it was held that the words "I give to M. all my household effects, books and papers of value, and everything the house contains" did not pass a bank-book showing a deposit of twenty-five hundred dollars, although found in the house.

In *Jackson* v. *Piscataqua Savings Bank*, 70 N. H. 283, [47 Atl. 613], it was held a bank-book showing deposits in the name of Nathaniel Jackson, Jr., where testator had retained the book in his possession till death, and did not by making the deposit intend a gift, did not pass by a bequest of "cer-

tain books marked with his name," there being found three
ordinary books marked "Nathaniel Jackson."

"Words of a will are to be taken in their ordinary and
grammatical sense, unless a clear intention to use them in
another sense can be collected, and that other can be ascer-
tained." (Civ. Code, sec. 1324.) Applying this rule to the
words in question, would the ordinary man understand by the
words "my books" used in ordinary conversation that the
speaker meant bank-books? If a man should say in ordinary
conversation, "I am the possessor of one hundred books,"
would any listener suppose for a moment that he meant to
include in such statement "bank-books"? We think that the
answer to both these questions is obviously no, notwithstand-
ing the definition of the word "book" given in dictionaries
is broad enough to include bank-book. "The words of a will
are to receive an interpretation which will give to every ex-
pression some effect, rather than one which will render any
of the expressions inoperative" (Civ. Code, sec. 1325) ; "and
a testator is to be considered as intending a benefit to the
object of his gift." (*Perkins* v. *Mathes,* 49 N. H. 107; *Wal-
lace* v. *Wallace,* 23 N. H. 149.)

If the construction of this will asked by appellant be
adopted, the residuary legatee would receive nothing and the
residuary clause would have no effect, for the entire residue,
including the $1,661 in money distributed to said legatee,
amounted in value to but $2,160. (The inheritance tax
charged to said legatee was $108, which is the tax on a valua-
tion of $2,160.) The real estate and typewriter which, ac-
cording to the theory of appellant, constitute the residue of
the estate, therefore, were worth but seven hundred dollars.
This would not be sufficient to pay the Connolly legacy of
one thousand dollars, not to mention the six-hundred dollar
debt owing by testator to appellant and by the will directed
to be paid, and the other debts and expenses of administra-
tion, all of which, under the law, are first chargeable against
the property given to the residuary legatee before resort
could be had to any property given to appellant. (Civ. Code,
secs. 1359, 1360.) Neither Connolly nor Mrs. Roberts could
have properly received anything from this estate if the con-
tention of appellant be correct, for, exclusive of the $8,700
represented by the bank-books, the entire estate seems to have

consisted only of the typewriter and real estate, valued at seven hundred dollars, about six hundred dollars received from the employers of testator, and some rentals from the real estate, while the debts and expenses of administration seem to have exceeded six thousand dollars. It is true that the debts and expenses seem to have been paid by the executor out of the moneys in bank; but if the contention of appellant be correct these moneys should not have been resorted to until the property given to the residuary legatee had been exhausted. (Civ. Code, secs. 1359, 1360.) Thus it is seen that if the lower court had adopted the construction asked by appellant, and such construction had been fully carried out in the settlement of this estate, both the bequest to Connolly and to Mrs. Roberts would have been rendered nugatory, and the rule laid down in section 1325 of the Civil Code, as well as the rule followed in *Perkins* v. *Mathes*, 49 N. H. 107, violated. Where a testator leaves among his effects a large number of law-books and other ordinary books we do not think that a court ought to assume that by a bequest of "all my books and papers" a testator meant to give several thousand dollars on deposit in banks, although such deposits are evidenced by bank-books, especially where, as in this case, such an interpretation would render of no effect other provisions of the will.

The decree of distribution is affirmed.

Cooper, J., and Harrison, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 23, 1905.