Nash, J.
 

 The facts in this case are not controverted ; and our only business is to put a construction on the will of John Richmond. It is contended by the plaintiff, in the first place, that by the death of Mrs. Richmond during the life of the
 
 *585
 
 testator, the legacy to her is either lapsed, whereby it falls to the residuum; or the testator has died intestate as to the property contained in it: neither proposition is true.
 

 It is a general rule, that where a legatee dies before the tator, the legacy lapses. But there are several exceptions to it, all of which are enumerated by Mr. Roper in his Treatise' on Legacies; 1st vol. p. 320 to p. 341. The exceptions are' founded on the manifest intention, as apparent in the will of the testator, that it shall not lapse, but go to some other person. Thus in Eales and England, Precedents in Chancery, 200, the testatrix gave to B. three hundred pounds with a declaration of her will, that B. should give the £300
 
 at his death
 
 or sooner, to his daughter C.' B. died before the testatrix, leaving C. surviving him. The court declare, that the legacy to B. did not lapse, but that C. took it on the death of the testatrix. And the bequest was compared to one made to B. for life remained to C., in which case, C.’s right to the legacy' could not be questioned. Here the bequest to Mrs. Richmond,in the first clause, is to her for life .only, with remainder, as' expressed in the third clause, to the defendant John C. Richmond. There is in fact nothing to lapse. The remainder' man is to take whenever the wife, Mrs. Richmond, dies. And' upon the death of the testator, John C. Richmond took all the' property, immediately, by virtue of the third clause' of the will.
 

 The next question raised by the pleadings is, what négro'es' passed to John C. Richmond by the will. It appears that in the first clause, the testator gives Nicey
 
 and her children,
 
 and!' by the third, Sylvy and her
 
 jive children,
 
 and Riah and her' child. Both Nicey, and Silvy, and Riah, and her child, named Sally, have had several children since the making of the will, and before the death of the testator. The plaintiff alleges,- that, under the will, John C. Richmond can take none but those named in it, and who were in being when it was executed; and that the children and grandchildren, born be. tween that time and the testator’s death, ate not disposed of by the will, and that they either fall into the residuum, if there
 
 *586
 
 be oile, or the' testator has dic'd intestate as to them, and they are course to be divided among the next of kin, himself and the defendant John C. On the part of the defendant John
 
 C-
 
 ^ jg con(en(]e¿|í jf the will does not carry the after bom children, then it is a case of partial intestacy, and the testator having, in his lifetime, put them into his possession, it is, tinder the act of 1806, Rev. St. ch. 37, sec. 17, an advancement.
 

 We are of opinion, that, under the two clauses referred to, John C. Richmond took only the negroes mentioned in the will, and that all the children bom after the date of the will are (indisposed of by it. If there were a residuary clause, the after born slaves would fall into it;
 
 Jones
 
 and
 
 Jones, Con.
 
 Rep. 310. But the testator has created no residuum. The 4th'clause of the will is a special bequest of particular articles. As, therefore, there is no residuum,, the testator, as
 
 to
 
 the after botn slaves, has died intestate. The question raised by the defendant under the act of 1806, has never, until now, been directly before the court. But there can be but little doubt how it would have been decided, if it had been so' presented, as to-call upon the court for an opinion. In the case of
 
 Stallings
 
 against
 
 Stallings,
 
 1 Dev. Eq. Rep. 298, the then Chief justice expressed an opiniou,. that,under the act of 1806, when a peuson puts a slave into the possession of his child, and suffers it to remain, there until his death, it will be an advancement to the child, not alone in the case of an intestacy properly so called, but also where, having made his will, he omits to dispose of that particular slave, which is a partial intestacy. In that case there was ho will, and consequently the question did not arise. It is but the opinion of a most respectable and reflecting judge, and entitled in the highest consideration; and wherever in subsequent cases it has been alluded to, it has always been so treated-. In the case of
 
 Hurdle and others
 
 against
 
 Elliott,
 
 1 Ired. Rep. 176, the court, in delivering its opinion says, “the 'question we are now considering, as a general one, is a very important one, and requires much consideration.” The opinion does not profess to discuss and much less decide it, and yet, in a very few lines, the argument against the
 
 dictum,
 
 in
 
 *587
 

 Stallings
 
 v.
 
 Stallings,
 
 is summed up, with a precision that leaves no doubt as to what would have been the opinion the court if they had then decided it. In commenting on the words, “ he or she dying intestate,” as contained in the act 1806, the court says, “the objections to the doctrine of a partial intestacy being within the act, are not few nor trivial.” It then enumerates some of them, as that the acts speaks of intestacy, without qualification; next the act speaks only of such gifts as may grow into advancement upon the death of the parent, and there is no such thing as advancement or hotchr potch in personalty upon a partial intestacy. Suppose a far ther put a negro into the possession of his son, and after by his will give the son the negro for life. Here, by the
 
 will,
 
 the testator dies intestate as to the remainder; is the son to tal?e the life estate under the will, and the remainder by way of advancement, in direct opposition to the will 7 Though the court does not decide the question, yet the reasons urged against it have an authority little less binding. They show the point had been well and maturely considered, and upon a review of them, wo consider them decisive. The court says, however, that the question is open to discussion, and they invite it. The counsel on this occasion has not favored us with an argument in support of his position.' Again : in the case of
 
 Freeman
 
 and
 
 Knight, 2
 
 Ired. Eq.
 
 75,
 
 the court strongly intimates its dissent to the
 
 dictum
 
 in
 
 Stallings
 
 v.
 
 Stallings.
 
 It is to be remarked, that, in both the cases of
 
 Hurdle
 
 v.
 
 Elliott,
 
 and that of
 
 Ford
 
 and
 
 Whidbee, 1
 
 Dev. & Bat. Eq. 21, the court treats the question of bringing legacies into hotchpotch with advancements, ns one too plain to be argued or disputed. And yet hotch-potch, or accounting for what has been received from a parent by a child, lies at the foundation of the doctrine of advancement, equality being the object of the law. In a case then of partial intestacy, the doctrine of advancement cannot exist; property, put into the hands of a child by a testator, and not otherwise disposed of by the will, though remaining in the possession of the child at the time of the parent’s death, is still the property of the estate of which the
 
 *588
 
 testator has died intestate, and as such must be distributed unthe law among the next of kin.
 

 We are of opinion that John Richmond died intestate as to a]j tjje negroes )3om af¡;er the making of his will and before his death, whether in the possession of the plaintiff or the defendant, John C. Richmond, and that they must be divided equally between the two next of kin. As regards the money, bonds and notes, which at the death of John Richmond were found either in the chest, bequeathed in the first clause, or in the desk bequeathed in the third, we are of opinion that the defendant, John C. Richmond, is entitled to the whole, whether put there by the testator at the time the wilt was made, or put there by him since. The bequest is of the chest and all in it — and so also of the desk.
 

 Per Curiam, Decree accordingly.