Christian C. Taubenhan *et al.*

*v.*

Margareth Dunz.

*Filed at Ottawa June 16, 1888.*

1. Wills—*rule of construction.* The question of first importance in the construction of any will is, what was the intention of the testator,— and when that is ascertained, effect is to be given thereto. In the absence of latent ambiguity, the intention of the testator is to be gathered alone from the will itself, from a full view and consideration of everything contained therein.

2. Every portion of a will must have its just operation, unless there arises irreconcilable repugnance, or some portion is absolutely unintelligible; and the natural construction of the words employed will be adopted, unless there is such an impracticability of so construing them as to authorize their rejection, or such uncertainty that no effect can be given to them.

3. Same—*presumption—as to disposal of entire estate.* It is presumed that a testator, when he makes and publishes his will, intends to dispose of his entire estate, unless the presumption is rebutted by its provisions, or evidence to the contrary.

4. Same—*disinheriting heir—construction.* An heir is not to be disinherited without an express devise or necessary implication.

5. Same—*extent of devise—as to the property embraced therein.* Where it appears that it was the intention of the testator to bestow all his estate upon one person, that intention will not be defeated by a partial designation of the property, if the general words, giving to them their natural meaning and operation, are comprehensive enough to embrace the whole estate.

6. A testator devised to a person named, all his real estate by its proper description, and all his interest in a certain note secured by a deed of trust, immediately following which are these words: "Also, $3000 in money, to be paid to her by my executor; also, all the loose property in, on and around the homestead, consisting of one cow, two hogs, and a lot of wood, and all other property of every kind." The testator owned other promissory notes for money loaned: *Held*, that but for the last clause the general description might have been limited to property of the like kind, as, cows, hogs and wood, but that with those words the sole devisee took all the property and estate left by the testator.

7. The adjudged cases indicate the disposition of the courts to adhere to the sound rule, which gives to words of a comprehensive import their full extent of operation, unless some very distinct ground can be collected from the context for considering them as used in a special and restricted sense. This is especially true where there is no other bequest capable of operating on the general residue of the testator's personal estate.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Carroll county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Shortly before his death, Charles Medler, of Carroll county, made and published his last will and testament, in these words:

"*In the name of God, amen*: I, Charles Medler, of the age of sixty-nine years, of the city of Mount Carroll, in the county of Carroll, and State of Illinois, being of sound mind and memory, do make, publish and declare this my last will and testament, in the manner following,—that is to say: I will and direct that all my just debts and funeral expenses be paid in full. Second, I give and bequeath unto my friend, Margareth Dunz, the homestead and all the lots and parcels of land adjoining, being lots 2, 3 and 4; also a strip of land, twenty-three feet in width, off the north side of lot No. 7, all in block 15, in the N. Halderman plat of the town, now city, of Mount Carroll; also, one lot in the east part of the city of Mount Carroll, now owned by me and described by deed; also, all interest I now have in a certain promissory note for $200, given by Charles Stober, dated November 19, 1873, and secured by a certain trust deed of the same date on lot 11, in block No. 5,

in West Carroll, as laid out by David Emmert, and signed by Charles Stober and wife; also, $3000 in money, to be paid to her by my executor; also, all the loose property in, on and around the homestead, consisting of one cow, two hogs and a lot of wood, and all other property of every kind,"—and revoking and annulling former wills.

The will was dated December 31, 1882, was admitted to probate the following February, and Horatio B. Blake duly appointed administrator with the will annexed, who qualified as such.

It appears that appellants are residents of Saxony, Germany, and, claiming to be the sisters and only heirs of the testator, they petitioned the Carroll county court, and claimed that all the estate of their brother, "except the $3000 and the other articles specifically named and described in the will as devised and bequeathed to Margareth Dunz," belonged to them, as such heirs, and asked an order of distribution to that effect. It was alleged in their petition that the devises and bequests to Margareth Dunz had been surrendered and paid over to her; that the debts of the estate had been paid, and that the administrator had in his hands, subject to distribution, about $2000. The administrator also petitioned the court to make an order of distribution, and represented that the debts of the estate and the legacies in the will had been paid, leaving a balance of $1943.38 in his hands.

What disposition was made of the case in the county court does not appear, but the case presented by the petitioners was carried by appeal into the circuit court of that county, where, on hearing, it was found by the court that Margareth Dunz took, under the will, all the estate of the testator, and accordingly ordered the dismissal of the petition. Upon further appeal to the Appellate Court for the First District, at the November term, 1886, the judgment of the circuit court was affirmed.

Messrs. VOCKE & STORCK, for the appellants:

The heir is not to be disinherited without an express devise or necessary implication. 1 Jarman on Wills, (5th Am. ed.) 356; 1 Redfield on Wills, \*426, note, \*435.

The heir is always to be favored at law, and not to be excluded upon mere conjecture. On the contrary, there must be satisfactory evidence of an intention to give a beneficiary interest to the devisee. *Saylor* v. *Plaine,* 31 Md. 158.

When a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers. *Wood* v. *Mitcham,* 92 N. Y. 375; *Crane* v. *Doty,* 1 Ohio St. 279; *Areson* v. *Areson,* 3 Denio, 458.

The intent to exclude the heir must be clear and manifest, (*Moone* v. *Heaseman,* Willes, 141,) and that intent must be collected from the words used, and not from conjecture. *Hay* v. *Earl of Coventry,* 3 T. R. 83; *Moore* v. *Denn,* 2 Bos. & P. 247; *Wheaton* v. *Andress,* 23 Wend. 452; *Haxtun* v. *Corse,* 2 Barb. Ch. 506.

Where the meaning of a devise is uncertain, the law will adhere as closely as possible to the general rules of inheritance, and whoever claims against the laws of descent must show a satisfactory written title. *Grim's Appeal,* 89 Pa. St. 333.

Where bequests are made by words of enumeration, which are followed in the same clause by collective words, or words of general description, the latter may be confined to matters *ejusdem generis. Rawlings* v. *Jennings,* 13 Ves. 39; *Dole* v. *Johnson,* 3 Allen, 364; *Johnson* v. *Goss,* 128 Mass. 433; *Farish* v. *Cook,* 78 Mo. 212; *Fraser* v. *Alexander,* 2 Dev. Eq. 348; *Wrench* v. *Jutting,* 3 Beav. 521; *Timewell* v. *Perkins,* 2 Atk. 102; *Pippin* v. *Ellison,* 12 Ired. L. 61; *Hotham* v. *Sutton,* 15 Ves. Jr. 319; *Cook* v. *Oakley,* 1 P. Wms. 302; *Doe* v. *Rout,* 7 Taunt. 79; *Collier* v. *Squire,* 3 Russ. 467; *Bullard* v. *Goffe,* 20 Pick. 252; *Crichton* v. *Symes,* 3 Atk. 61.

Mr. JAMES M. HUNTER, and Mr. GEORGE L. HOFFMAN, for the appellee:

It is presumed that a testator, when he makes and publishes his will, intends to dispose of the whole of his estate, unless the presumption is rebutted by its provisions, or evidence to the contrary. *Higgins* v. *Dwen*, 100 Ill. 554; *Smith* v. *Smith*, 17 Gratt. 268; *Irwin* v. *Zane*, 15 W. Va. 646; Jarman on Wills, (4th ed.) 143, note 6.

The intention of the testator must govern, which must, if possible, be ascertained from the language of the instrument. *Bergan* v. *Cahill*, 55 Ill. 160; *Johnson* v. *Johnson*, 98 id. 564; *Rountree* v. *Talbot*, 89 id. 246.

Generally, a will is not to be construed by anything *dehors*, when there is no latent ambiguity; and parol evidence is not admissible to show the intention of the testator, against the construction on the face of the will, and to explain the intention of the state of his property. *Heslop* v. *Gatton*, 71 Ill. 528.

Wills must be construed according to the intention of the maker, and that must be ascertained from an examination of the instrument and all its provisions, without the aid of extraneous testimony. *Updike* v. *Tompkins*, 100 Ill. 406; *Blanchard* v. *Maynard*, 103 id. 60.

Where the language of a will is clear and unambiguous, and there is no conflict in its various provisions, and no absurdity would thereby be involved, it should be given effect according to the literal terms used, taken in their general and popular sense, without regard to the situation, circumstances or condition, either of the testator, his property or family. *Welsch* v. *Savings Bank*, 94 Ill. 191; *Land and Loan Co.* v. *Bonner*, 75 id. 327; 1 Redfield on Wills, 429, 430.

The words, "all other property of every kind," are sufficient to pass choses in action or any other personal estate. *Hardle* v. *Outlaw*, 2 Jones' Eq. 75; *Jackson* v. *Hansel*, 17 Johns. 281.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

But a single question is presented by this record,—namely, what portion of the estate of Charles Medler, deceased, did Margareth Dunz take under his will,—or, otherwise stated, was any portion of said estate intestate estate. It is not controverted but that Margareth Dunz took possession of and had received the lands described and referred to, the sum of money named, the particular note and the specific articles of personal property described and referred to in the will; but after this was done, there remained in the hands of the administrator about $2000 in money and $2420 of notes reported by him as uncollectible, and this residue of the estate was claimed both by Margareth Dunz, under the will, and by appellants, the sisters of the testator, his heirs-at-law, as intestate estate.

The question of first importance in every case of construction of a will is, what was the intention of the testator,—and when that is ascertained, effect is to be given thereto. In the absence of latent ambiguity, the intention of the testator is to be gathered, alone, from the will itself,—from a full view and consideration of everything contained within "the four corners of the instrument." (*Hoxie* v. *Hoxie,* 4 Paige, 187; *Updike* v. *Tompkins,* 100 Ill. 406; *Blanchard* v. *Maynard,* 103 id. 60.) Every portion of the instrument must have its just operation, unless there arises an irreconcilable repugnance, or some portion is absolutely unintelligible. As was said in *Dawes* v. *Swan,* 4 Mass. 208, it is the duty of the court "to give effect to all words, without rejecting or controlling any of them, if it can be done by a reasonable construction, not inconsistent with the manifest intention of the testator." See, also, 1 Redfield on Wills, 434; *Illinois Land and Loan Co.* v. *Bonner,* 75 Ill. 315. And further, the natural construction of the words employed will be adopted, unless there is such an impracticability of so construing them as to authorize their rejection, or such uncertainty that no effect can be given them. *Mowatt* v.

34—125 ILL.

*Carow,* 7 Paige, 328; *Welsch* v. *Belleville Savings Bank,* 94 Ill. 191.

In the will before us, there is neither ambiguity, repugnance nor unintelligibility, and if the words employed are given their natural construction and meaning, disposition is made of the testator's entire estate. "It is presumed that a testator, when he makes and publishes his will, intends to dispose of his entire estate, unless the presumption is rebutted by its provisions or evidence to the contrary." (*Higgins* v. *Dwen,* 100 Ill. 554.) There is, here, not only no evidence *aliunde* of a contrary intention, but in the will itself no words are to be found manifesting an intention to leave any part of the testator's estate undisposed of. His estate, in fact, consisted of both real and personal property, a large part made up of promissory notes. No question is made in respect to his real estate,—all that was specifically devised; nor in respect of the Stober note, the $3000 in money, or the loose property "in, on and around the homestead." All that, it seems to be conceded, was specifically bequeathed. Nor is it contended but that the final granting words of the will, "and all other property of every kind," are sufficiently broad and comprehensive in meaning, if given their natural construction, to embrace the residue of the estate, consisting of the proceeds of the choses in action possessed by the testator at the time of his decease. But the contention on behalf of appellants is, first, that the heir is not to be disinherited without an express devise or necessary implication; and second, that the words, "and all other property of every kind," should be confined to articles *ejusdem generis* with loose property in, on and around the homestead, and that as to all that part of his estate not specifically disposed of by will, the testator died intestate, and the same descended to his heirs-at-law.

The rule that the heir is not to be disinherited without an express devise or necessary implication, is not questioned; but the rule can have no application here, and need not be further

considered, because we have in this will an express devise, broad and comprehensive enough to embrace every species of property owned by the testator, unless the words, "and all other property of every kind," by their connection and juxtaposition are to be limited to property *ejusdem generis* with property theretofore particularly named.

The principle of construction secondly invoked, and upon which chief reliance is placed, and by which it is sought to limit and circumscribe the application of the words of the will last referred to, which, torn from their context and standing alone, would manifest the clearest intention to bestow upon the only person named in the will the residue of the testator's estate, is in the highest degree technical, and ought not to be adopted and applied, unless, from an inspection and consideration of all the provisions of the will, its adoption and application are required to carry out and give effect to the discerned intention of the testator. There is not in the principle itself anything that can give to it the nature and character of a rule of property. But does the will before us present a case of either doubt or uncertainty? We think not. But a single legatee is named in the will. But one object of his bounty seems to have been in the mind of the testator. True, he specified only a part of his property; but such specific designation was followed by words of comprehensive import. As said by Lord ROMILLY, in *Nugee* v. *Chapman*, 29 Beav. 290, "it is not uncommon for persons who intend to include everything, and who do not write accurately, to specify many items, and then to add a general expression." This will is inartificially drawn. It is manifest that the scrivener had some knowledge respecting the words employed in making testamentary devises and bequests; but it is apparent from an inspection of the will itself, that he had little knowledge of the forms necessary in making testamentary disposition of estates. If it was the intention of the testator to bestow all his estate upon one person, that intention will not be defeated by a partial designation, if

the general words, giving to them their natural meaning and operation, were comprehensive enough to embrace the whole estate. It is easy to see it was the intention that the legatee should take the particular lot of land occupied by him as a homestead, and from the description thereof in the will, it is apparent that the draughtsman supposed the testator owned it in fee, whereas, the fact is he only owned the undivided one-half interest. And it is also apparent that the intention was to give the same legatee a portion, at least, of the loose property in, on and around the homestead; but it might very well have been questioned whether it was the intention to give the legatee "all the loose property in, on and around the homestead," since these general words are immediately followed by the particular words,—"consisting of one cow, two hogs and a lot of wood." There were, in fact, in, on and around the homestead, many other articles of property, such as kitchen furniture, ten bushels of potatoes, three boxes export beer, four and three-quarters barrels cider, thirty bushels corn, fifty bushels oats, a ton of hay, a lot of ice and lumber, and implements and tools of various sorts; and it might well have been said that the general words, "all the loose property in, on and around the homestead," should be cut down to articles *ejusdem generis* with cows, hogs and wood. There would then have been presented just such a case of doubt and uncertainty as is contemplated for the application of the principle of construction *ejusdem generis*. Were furniture, potatoes, beer, cider, corn, oats, hay, ice, lumber, tools and implements *ejusdem generis* with cows, hogs and wood?

It is singular, perhaps, that this will should itself enable us to most clearly, and, as it seems to us, satisfactorily, mark the distinction between a case where the principle might be thought to apply, and the case so strongly urged upon us. We can understand how all the loose property in, on and around the homestead might, by the application of the principle, be cut down to articles *ejusdem generis* with cows, hogs and wood;

but what shall be said of the further words, "and all other property of every kind?" With which class or species of property shall they be held to be *ejusdem generis?* Shall they be cut down and limited to cows, hogs and wood? The testator only had one cow, two hogs and one lot of wood, and these were specifically bequeathed, and to hold the general words limited to the particular articles bequeathed, would be to render inoperative words of the most general import, because there would be no property upon which they could operate and to which they could attach. Operation and effect must be given to each and every provision in the will, as we have seen, unless there is irreconcilable repugnance, or unless the provision is unintelligible. It is clear neither exception here exists; and if the general words, "and all other property of every kind," can not be cut down to the particular articles named in immediate connection, then there are left no particular words, either immediately preceding or following, by which they may be qualified. There are no following words, and the preceding words (excluding, as we have seen we must, the cow, hogs and wood,) are themselves general words,— namely, "all the loose property," etc.

The most careful examination and analysis of the provisions of this will, and of the authorities relied upon, have satisfied us that the principle of construction contended for can not be applied to this will. A testator may dispose of his estate by will, by specific or general designation of the subject of devise, or by both; and he may devise his entire estate to a stranger to the exclusion of the heir. He need observe no set form or phrase or order. All that is required is, that he shall so express himself, and employ such words, as, giving to them their natural and ordinary meaning and acceptation, his intention shall be discernible. The testator, here, was without wife or child, and had no one apparently dependent upon him. His only kindred were far-removed residents of a foreign country, and with whom, so far as has been disclosed to us, he held no

communication. Shortly before his death he made and published his last will and testament, wherein he made specific devise to appellee of all his real estate and a considerable portion of his personalty, and concluded the granting portion of his will by the selection of words of most general import and operation, and no satisfactory reason has been suggested why the intention clearly manifested by the plain words of his will, that provision was therein made for the disposition of his entire estate, and that the sole legatee therein named should take it all, ought not to prevail. We are not advised what relation appellee sustained towards the testator, nor is it material. It is enough for the purposes of this case and the question before us, that she is made the sole beneficiary of the testator's bounty.

No extended review of the cases relied upon by appellants will be necessary. In the following cases, among others examined, it was held that the general words were limited by the particular devise: *Rawlings* v. *Jennings,* 13 Ves. 39 ; *Dole* v. *Johnson,* 3 Allen, 364, (but see *Brown* v. *Cogswell,* 5 id. 556) ; *Johnson* v. *Goss,* 128 Mass. 433 ; *Frasier* v. *Alexander,* 2 Dev. Eq. 348 ; *Farish* v. *Cook,* 78 Mo. 212 ; *Wrench* v. *Jutting,* 3 Beav. 521 ; *Timewell* v. *Perkins,* 2 Atk. 102 ; *Pipin* v. *Ellison,* 12 Ired. L. 61, (but see *Hurdle* v. *Outlaw,* 2 Jones' Eq. 75) ; *Hotham* v. *Sutton,* 15 Ves. Jr. 319 ; *Cook* v. *Oakley,* 1 P. Wms. 302 ; *Collier* v. *Squire,* 3 Russ. 467 ; *Crichton* v. *Symes,* 3 Atk. 61 ; *Bullard* v. *Goffee,* 20 Pick. 252. Interesting and instructive as these cases are, they fitly illustrate the refinement of learning upon this subject, and at the same time demonstrate the impossibility of formulating a settled rule of construction of general application, and they further show that wherever the principle contended for has been applied, the decision is based on the peculiarities of language and fact in the particular case.

In contrast with the foregoing, reference is here made to a line of authorities where the principle has been denied appli-

cation: *Nugee* v. *Chapman,* 29 Beav. 290; *Grover* v. *Davis,* id. 222; *Swinfen* v. *Swinfen,* id. 207; *Bennett* v. *Bachelor,* 3 Brown's Ch. 26; *Dean* v. *Gibson,* 3 L. R. Eq. 713; *Hodgson* v. *Jex,* L. R. (2 Ch. Div.) 122; *Arnold* v. *Arnold,* 2 M. & K. 366. In the last case cited, the bequest of "my wines and property in England," was held to apply to the testator's property in England, of every description, and was not confined to property *ejusdem generis* with wines; and it was observed by Sir John Leach, Master of the Rolls: "The mere enumeration of particular articles, followed by a general bequest, does not of necessity restrict the general bequest, because, as has been stated, a testator often throws in such specific words and then winds up the catalogue with some comprehensive expression, for the very purpose of preventing the bequest from being so restricted. Clearly, therefore, in the ordinary case, the gift of the wines would not be limited by the occurrence of the subsequent word 'property,' which, be it observed, is as large and comprehensive a term as can possibly be used. * * * Indeed, I have been unable to discover any instance in which the word 'property' has been confined to articles of the description above enumerated, unless where other expressions occurred from which it was clear that the word was not there used in its ordinary sense. The cases upon this subject naturally turn upon very nice distinctions. In most of them the general bequest sought to be restricted has been of 'effects,' and I know of none in which the question has arisen on the word 'property,' unless where it has been introduced by way of exception or qualification to the prior gift." And Mr. Redfield observes in his work on Wills, (vol. 1, p. 442, note,) that "the courts of equity, even in England, do not seem to apply the rule *ejusdem generis* with so much strictness as formerly." See, also, the following: *Martin* v. *Glover,* 1 Coll. 269; *In re Kendall,* 14 Beav. 608; *Flemming* v. *Burrows,* 1 Russ. 276; *Jarnagin* v. *Conway,* 2 Humph. (Tenn.) 50; *Hurdle* v. *Outlaw,* 2 Jones' Eq. 75; *Bunting* v. *Harris,* Phill. Eq. 11; *Kennedy* v. *Keily,* 28

Beav. 223; *Campbell* v. *Prescott,* 15 Ves. 503; *Mitchell* v. *Mitchell,* 5 Mad. 69.

Without extending this citation of authorities, the result of our examination may be stated in the language of Mr. Jarman, (1 Jarman on Wills, 761): The adjudged cases "indicate the disposition of the judges of the present day to adhere to the sound rule which gives to words of a comprehensive import their full extent of operation, unless some very distinct ground can be collected from the context for considering them as used in a special and restricted sense." And especially must this rule be observed where there is no other bequest capable of operating on the general residue of the testator's personal estate, as is the case here.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*