In the Matter of the Final Judicial Settlement of the Accounts of MORTIMER F. REYNOLDS, as Executor, etc.

*It seems* that general words, following an enumeration of articles in the residuary clause of a will, are to be given the broadest and most comprehensive meaning of which they are susceptible, in order to prevent intestacy as to any portion of the testator's estate.

Except, however, in a residuary clause or where the will contains no such clause, when certain things are named in a devise or bequest, followed by a phrase, which need not, but may be, construed to include other articles, it will be confined to articles of the same general character as those enumerated.

R. devised and bequeathed to his son M. certain real estate "with all the lands, buildings and appurtenances thereunto belonging, or in anywise appertaining, and including all the furniture and personal property in and upon the same, or in any manner connected therewith." The testator's office was in a building on the property so devised, and connected with it was a vault in which money and securities were kept, and when the testator died this vault contained certain securities which M. claimed under said provision of the will. The will contained a residuary clause

under which the securities would pass, in case M.'s claim was not sustained. *Held,* that the general words in the bequest to M. did not include the securities.

By other clauses of his will, R. devised to his wife his homestead, and gave to her "the use, for life, of all household furniture * * * and all other personal property other than money, choses in action and securities, which shall be in and upon the premises at my said homestead or habitually kept there at the time of my decease." M. claimed that the omission to make a similar exception in the provision made for him should be taken as an indication of an intention to give to the words "personal property" therein their most comprehensive meaning. *Held,* that such omission was not controlling, but simply a circumstance to be considered in connection with the whole will, in attempting to ascertain and to give effect to the testator's intention.

Upon the accounting of the executors of the will, the surrogate refused to credit them with $250 paid to a commandery of which the testator was a member, for parading at his funeral, and which did not appear to have been demanded by it as a condition of participation. *Held,* no error.

(Argued February 6, 1891; decided March 3, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 1, 1889, which affirmed a decree of the surrogate of the county of Monroe.

The record presents the proceedings had upon the final judicial settlement of the accounts of Mortimer F. Reynolds, as executor of the last will and testament of Abelard Reynolds, deceased. The decree in which such proceedings finally resulted proved unsatisfactory to the executor and appellant in two respects:

1st. It decreed that certain stocks, bonds, leases and bankbooks of the value of about $12,000, which were in a safe in the arcade at the time of testator's death, did not pass to Mortimer F. Reynolds individually under the third clause of the will, but became a part of the residuary estate provided for by the fifth clause.

2d. It adjudged that a payment of $250 by the executor to the Monroe Commandery was not chargeable against the estate as part of the funeral expenses.

The will of said Abelard Reynolds provided as follows :

"*First.* I give and devise to my wife Lydia S. Reynolds the homestead where I now reside, on Fitzhugh street in said city of Rochester, with all the lands, privileges and appurtenances thereto belonging or appertaining, to have and to hold the same to her own use during the continuance of her natural life.

"*Second.* I give and bequeath to my said wife all the provisions and supplies of every kind which may be on hand at my said homestead at the time of my decease, and the use during her life of all the household furniture, goods, horses, carriages, harness and all other personal property (other than money, choses in action and securities) which shall be in or upon the premises at my said homestead or habitually kept there at the time of my decease.

"*Third.* I give, devise and bequeath to my son Mortimer F. Reynolds my property situated upon West Main street (formerly Buffalo street) in said city of Rochester, extending through to Exchange place in the rear, known as Reynolds' arcade, including also East arcade (so-called), with all the lands, buildings and appurtenances thereunto belonging, or in anywise appertaining, and including all the furniture and personal property in and upon the same, or in any manner connected therewith, to have and to hold the same to his own use and benefit forever, subject, however, to the payment of the following sums, which are hereby made a distinct charge thereon, viz. :

"An annuity of three thousand dollars to my said wife, to be paid to her in four equal quarterly payments from and after my decease in each year during the continuance of her natural life. Also the sum of fifty thousand dollars, with annual interest thereon from the time of my decease, to my granddaughter Clara L. Amsden, and the like sum of fifty thousand dollars, with like interest, to my granddaughter Sophia C. Strong, to be paid to them respectively, as follows : In annual instalments of at least ten thousand dollars per annum to each of them, to be applied first to the payment of the interest which may be then due, and the residue upon the

principal until the whole is paid. The first instalment to be paid at the expiration of one year from the time of my decease, with the privilege, however, of paying a greater amount at any time, to the extent of all that may remain due and unpaid.

"*Fourth.* In case my said wife should refuse to accept the foregoing provisions made in her behalf, which, if accepted, are intended to be in full satisfaction and discharge of her right of dower, and of all other interest or claim which she may have in or upon any portion of my estate, real or personal, then and in that case only two-thirds of the aforesaid sum of fifty thousand dollars beqeathed to each of my granddaughters, with the interest thereon, that is, upon the said two-thirds, shall be paid during the life-time of my wife; but upon her decease all that may remain unpaid of the whole bequest of fifty thousand dollars to each of my said granddaughters, with interest thereon, shall become due and payable, and the instalments herein above provided for shall be continued until the whole is paid. No interest, however, is to be computed or paid upon the one-third, payment of which is suspended during the life of my said wife, except from and after the time of her decease.

"*Fifth.* I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my said son and executor, Mortimer F. Reynolds, in trust, to sell and dispose of the same, and convert the whole into money, or into good and safe securities, and out of the proceeds to pay first, to my granddaughter Sophia C. Strong, a sum which, when added to the advances made to her either by myself or by my deceased son William A. Reynolds, in his life-time, and now charged upon my books, shall be equal to the advances similarly made to my granddaughter Clara L. Amsden, also charged upon my books; and, after such payment, to pay to himself or retain out of the residue of such proceeds a sum which, when added to the sum charged as advances against him, the said Mortimer F. Reynolds, upon my books, shall be equal to the sum so advanced to each of my granddaughters. The remainder of the trust funds to be realized from the sale

herein directed to be divided equally between my two grand-daughters, one-half to each.

"The furniture and personal property, the use of which is given, in connection with the homestead, to my wife, is not, however, to be sold, in case she accepts the provisions herein made for her benefit, until after her decease, and whenever sold the avails are to be divided equally between my said granddaughters.

"*Sixth.* At any sale which may be made in pursuance of the foregoing directions the said Mortimer F. Reynolds is to be permitted to bid, and to have the same right and privilege of becoming a purchaser as if he were not named or acting as trustee.

"*Seventh.* As I have already provided for my sister Mary by gifts heretofore made, I make no further provision for her in this will.

"Lastly, I hereby constitute and appoint the said Mortimer F. Reynolds sole executor of this my last will and testament."

*Theodore Bacon* for appellant.    The language of the testator in the third clause of the will is ample to transfer the property in dispute to Reynolds individually. (*Swinfen* v. *Swinfen*, 29 Beav. 207; *In re Scarborough*, 30 L. J. Prob. 85; 6 Jur. N. S. 1166; *Hotham* v. *Sutton*, 15 U. S. 319; *Cambell* v. *Prescott*, Id. 503; *Michell* v. *Michell*, 5 Mad. 69; *Hearne* v. *Wigginton*, 6 id. 82; *Flemming* v. *Burrows*, 1 Russ. 276; *Taubenhan* v. *Dunz*, 125 Ill. 524; *Mahoney* v. *Donovan*, 14 Ir. Ch. 262, 388; *Tyrone* v. *Waterford*, 1 DeG., F. & J. 613; *Stuart* v. *Earl of Bute*, 3 Ves. 212; *Sock* v. *Myers*, 9 N. H. 430; Bouvier's Law Dic. tit. Property.)    The comparison of analogous clauses in the same instrument shows the intent of the testator. (*Sanderson* v. *Dobson*, 1 Exch. 141; *Doe* v. *Earles*, 15 M. & W. 450; Broom's Leg. Max. 452–454; *Strong* v. *White*, 19 Conn. 238; *Arnold* v. *Arnold*, 2 M. & K. 365; *McLaughlin* v. *McLaughlin*, 24 Penn. St. 20.)    The item of funeral expenses of the testator paid to the "Monroe Commandery," was properly paid. (*Offley* v. *Offley*, Proc.

Chan. 261; *Price* v. *Archbishop of Canterbury*, 14 Ves. 364; *Mullich* ∘ v. *Mullich*, 1 Knapp, 245; *Jennison* v. *Hapgood*, 10 Pick. 77; *Garvey* v. *MacCue*, 3 Redf. 313.)

*Spencer Clinton* and *D. D. Sully* for respondent. The property did not pass to Reynolds individually. (*Johnson* v. *Goss*, 128 Mass. 434; *Dold* v. *Johnson*, 3 Allen, 364; *Kennifer's Appeal*, 52 Mich. 352; *Spark's Appeal*, 89 Penn. 148; 1 Jarman on Wills, 760; *Woolcomb* v. *Woolcomb*, 3 P. Wms. 112; *Hutchinson* v. *Rough*, 40 Law Times, 289; *Hodgson* v. *Jax*, 2 Ch. Div. 122.) The word "property," as used in the third clause of the will, does not include choses in action. (*Pippin* v. *Allison*, 12 Ir. Law, 61; *Young* v. *Young*, 3 Jones' Eq. 216; *Lowe* v. *Carter*, 2 id. 378; *Scales* v. *Scales*, 6 id. 168; *Fraser* v. *Alexander*, 2 Eq. Div. 348; *Bradley* v. *Jones*, 2 Ired. Eq. 248; *Alexander* v. *Alexander*, 6 id. 229; *McGlaughlin* v. *McGlaughlin*, 24 Penn. 20; *German* v. *German*, 26 id. 116; *State* v. *Spaulding*, 19 Conn. 238.) Choses in action do not pass under a bequest like the present under the description of property to a certain place, for the reason that they have no locality. (*Flemming* v. *Brook*, 1 S. & LeF. 318; *Arnold* v. *Arnold*, 2 M. & K. 274; *Moore* v. *Moore*, 1 Brown's Ch. Cas. 127, 129; *Hertford* v. *Lowther*, 7 Beav. 1; *In re Aylesbury*, 11 Ves. 662; *Brooks* v. *Turner*, 7 Sim. 671; *Reed* v. *Stewart*, 4 Russ. 69; 2 Williams on Exrs. 1178; *Jones* v. *Sexton*, 4 Ves. 166; *Webster* v. *Wiers*, 51 Conn. 569; *Benton* v. *Benton*, 1 East, 247; *Wolf* v. *Scheffner*, 51 Wis. 53; *Manton* v. *Dubois*, 30 Ch. Div. 92; *Collier* v. *Squire*, 3 Russ. 467.) If the bank-book and certificate are to be taken as the money they represent, then under the general words employed, it would not pass. (*Campbell* v. *McGrair*, 9 Ir. Eq. 397; *Dutton* v. *Hockenhull*, 22 Wkly. Dig. 701; *Watson* v. *Arundul*, 10 Ir. Eq. 299; *Robert* v. *Kuffin*, 2 Atk. 113; *Gibbs* v. *Lawrence*, 30 Law J. Ch. 170; *Saunders* v. *Earle*, 2 Ch. Rep. 188.) The surrogate properly struck out the item paid to the Monroe Commandery. (*Powers* v. *Powers*, 48 How. Pr. 389.)

PARKER, J.   The testator's office was in the building devised to his son by the third subdivision of the will; connected with it was a vault, and within the vault a safe in which money and securities were kept.   When he died, a bank-book, certain securities of different kinds and money were there.   These, the appellant contends, passed to him under such subdivision, by which the testator devised to him, subject to a charge, the "Arcade   *   *   *   including all the furniture and personal property in and upon the same, or in any manner connected therewith."   And he challenges the determination of the Surrogate's Court that a proper construction of the will limits the bequest to such personal property in addition to furniture as properly belonged to and was employed by the testator in the use which he made of the building devised.

Our attention has not been called to any authority in this state which can be made serviceable in determining the question presented.   But in England and in several states in this country, the courts have had under consideration the rule which should guide the court in determining whether general words following an enumeration of articles in a bequest should be limited to things of the same general character as those enumerated, or be given the most enlarged meaning of which they are capable.

Appellant's counsel calls special attention to *Campbell* v. *Prescott* and *Hotham* v. *Sutton* (15 Ves. 500 and 319).   In *Campbell's* case, the court refers with approval to the observation of Lord MANSFIELD that the word "effects" is equivalent to "property" or "worldly substance."   And in *Hotham's* case, the words "other effects," in the connection in which they were there used, were held not to be restricted to things of the same kind as those specially enumerated.   In the first case the general words following an enumeration occurred in a residuary disposition, and in such cases the settled rule is that they will be given the broadest and most comprehensive meaning of which they are susceptible, in order to prevent intestacy as to any portion of the testator's estate.

In the latter case the testatrix, having two sons and a

daughter, B, C and D, bequeathed for their benefit a sum in consols, and gave all the residue of her personal estate to her youngest children, C and D. On the same day she executed a codicil and revoked so much of her will as related to the bequest to her son C of a share of her "plate, linen, household goods and other effects (money excepted)," and gave the whole thereof to her daughter.

It was held that the words "and other effects" were not restrained by the prior terms to articles *ejusdem generis*, and, therefore, the revocation extended to the general residuary personal estate. Lord ELDON, in delivering the opinion of the court, declared the doctrine to be settled that the words "other effects in general mean effects *ejusdem generis*." But held the rule not applicable to the case under consideration, because the exception made it apparent that the testatrix did not so understand it. He said "money cannot be represented as *ejusdem generis* with plate, linen and household goods." The express exception of money out of the "other effects" shows her understanding that it would have passed by those words; that express words were required to exclude it; and by force of the exclusion in the excepted articles she says she thought that the words of her bequest would carry things not *ejusdem generis*.

In *Swinfen* v. *Swinfen* (29 Beav. 207), the will recited: "I give to Mrs. Swinfen, my son's widow, all my estate at Swinfen, or thereto adjoining, also all furniture and other movable goods here." It did not contain a residuary clause. And it was held that the general words were not restricted to things *ejusdem generis*. And, therefore, the live stock and implements of husbandry on the lands, as well as money in the house at testator's death, passed to the legatee.

In *Michell* v. *Michell* (5 Mad. 69), the bequest was of "all and singular his plate, linen, china, household goods and furniture and effects that he should die possessed of." The court said that while the words furniture and effects are frequently used in a restricted sense, meaning goods and movables, that the fact that the word furniture was preceded by the word

" and," and " effects " followed by the phrase " that he should die possessed of," leads to the conclusion that it was used in a more enlarged sense and embraced all his personal estate.

In *Fleming* v. *Burrows* (1 Russ. 276), the bequest was to testator's son of " my furniture, plate, books and live stock, or what else I may then be possessed of at my decease." It was followed by a few specific bequests and the question was whether the general residue of the testator's personal property passed to the son. It was urged that the word " then " was evidently written by mistake instead of " there ; " that it should be read as intended ; and if that be done, the bequest having reference to locality must be treated as specific and not general. The court did not agree with such construction and held that it disposed of the entire personal estate, remarking in the course of the opinion that the instrument contains no residuary clause unless the words " or what else I may then be possessed of at my decease " are to be so construed.

In *In re Scarborough* (30 L. J. Prob. 85), the bequest was of " all my personal effects, and everything of every kind that I now have or may have at the time of my decease in my apartments at the above-named 13 Plaistow Grove, West, or elsewhere." Upon the application for letters of administration, a doubt was suggested whether the personal estate of testatrix, not in her apartments in Plaistow Grove or other apartments, was embraced in the bequest or passed to the next of kin, because as to it she died intestate. It was held that the words or elsewhere referred not to the locality of apartments, but to the effects of deceased and disposed of all the personal estate.

In *Taubenhan* v. *Dunz* (125 Ill. 524), the bequest to the devisee and legatee named in the will was as follows : " Also $3,000 in money, to be paid to her by my executor ; also all the loose property in, on and around the homestead consisting of one cow, two hogs, and a lot of wood, and all other property of every kind."

The testator owned other promissory notes for money loaned. It was held that as to them he did not die intestate. That they passed to the legatee under the will. In *Mahony* v.

*Donovan* (14 Irish Ch. 262–388), a bequest of "all my right and title to my property in the town of R., namely, my dwelling-house and household furniture, and all things therein especially my car-horse and covered side cars," was held to pass bank notes known by the testator to be in the house at the time the will was made. The master of the rolls, in the course of his opinion, said: "It is also to be observed that there is no residuary clause in this will, and the court is disinclined to put such a construction on a will as will lead to an intestacy as to part of the property."

We have now referred to the cases cited by the learned counsel for the appellant in support of his contention, and it will be observed that in every case, excepting *Hotham* v. *Sutton* and *Michell* v. *Michell*, in which the court held that the general words preceding or following enumerated articles should not be limited to things *ejusdem generis*, they either occurred in a general bequest of the whole of testator's estate, in a residuary clause, or the will did not contain a residuary disposition. With the exceptions thus noted, it seems to be a settled rule of construction that when certain things named are followed by a phrase which need not but might be construed to include other things, it will be confined to articles of the same general character as those enumerated. (*Johnson* v. *Goss*, 128 Mass. 434; *Dole* v. *Johnson*, 3 Allen, 364; *Spark's Appeal*, 89 Penn. 148.)

*Hotham* v. *Sutton* (*supra*), recognizes and asserts this rule of construction, but held it not applicable there, because of an exception which manifested that the testator thought otherwise. In Jarman on Wills, 760, after considering various English decisions in which it was held that general words would not be limited to things *ejusdem generis*, the author said: "It is to be observed, however, that in all the preceding cases there was no other bequest capable of operating on the general residue of the testator's personal estate, if the clause in question did not. Where there is such a bequest, it supplies an argument of no inconsiderable weight in favor of the restricted construction which is there recommended by the

anxiety always felt to give to a will such a construction as will render every part of it sensible, consistent and effective."

He alludes in that connection to *Woolcomb* v. *Woolcomb* (3 P. Wms. 112, Cox's ed.), where the testator bequeathed to his wife "all the furniture of his parsonage house, and all his plate, household goods and other goods (except books and papers), and all his stock within doors and without, and all his corn, wood and other goods belonging to his parsonage house," and gave the residue of his personal estate to J. S. The question was whether ready money, cash and bonds would pass to the wife? The court refused to give to the general words their broad meaning, but restricted them to goods *ejusdem generis*, inasmuch as a different construction would operate to frustrate the bequest of the residue.

Applying then the rule of construction deducible from the authorities, it may be conceded that if there were no residuary clause in the will so that as to the money and securities of the amount and value of twelve thousand dollars, Abelard Reynolds would have died intestate, unless it should be held to have passed by the bequest the words "and personal property in and upon the same or in any manner connected therewith" would be given the most comprehensive meaning of which they are susceptible for the purpose of preventing intestacy as to a portion of the estate. But there is a residuary clause. In the fifth provision the testator says: "I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, * * * in trust, to sell and dispose of the same and to convert the whole into money or into goods and safe securities," and after directing that out of the proceeds there should be paid to Sophia C. Strong and Mortimer F. Reynolds each such sum as added to their respective advancements will place them on an equality with the advancement made to Clara L. Amsden, he directed that the remainder be divided equally between his two granddaughters.

A case is, therefore, presented which requires the general words in the bequest to Mortimer F. Reynolds to be limited to things *ejusdem generis*. Such must be deemed to have been

the intention of the testator. Indeed it is difficult to conceive that he could have intended otherwise, in view of the fact that it would have substantially resulted in a disappointment of the residuary disposition.

In the second subdivision of the will the testator bequeaths to his wife for use during her life "all household furniture, goods, carriages, harness and all other personal property other than money, choses in action and securities which shall be in or upon the premises at my said homestead or habitually kept there at the time of my decease." And the appellant insists that the omission to make a similar exception of "money, choses in action and securities" in the third subdivision must be taken as an indication of his intention to give to the words "personal property" therein their most comprehensive meaning. That fact is not controlling, but it is a circumstance to be considered in connection with the whole will in the effort to so construe it as to give effect to the intention of the testator. And our conclusion in that regard is in accord with the result reached by the learned surrogate.

The refusal to credit the executor with the sum of two hundren and fifty dollars donated to a commandery, of which testator was a member, for parading at the funeral, was not error. No reason is offered for this attempted charge against the estate. It does not appear that such sum or any other was required as a condition of participation on the part of the commandery. It was a mere gratuity on the part of the executor, which he then or subsequently concluded to permit the residuary legatees to assume.

The judgment should be affirmed.

All concur.

Judgment affirmed.