HARRY J. WINKLER, Executor of the last Will and Testament of Joseph F. Neher, late of Wilmington Hundred, New Castle County, State of Delaware,

*vs.*

SARAH V. WOODRUFF, HARRY NEHER, LOUIS NEHER, JOHN HOFFHINZ and DAISY HOFFHINZ, his wife, GEORGE WEHNER and LILLIAN WEHNER, his wife, CHARLES CROSS and MARY CROSS, his wife, WILLIAM OLIVER and BERTHA OLIVER, his wife, and ALBERT KASTNER and GERTRUDE KASTNER, his wife.

*New Castle, Dec. 31, 1935.*

*Francis A. Reardon,* for complainant.

*Edward W. Cooch,* for Sarah V. Woodruff, Charles Cross, and Mary Cross.

*Abraham Hoffman,* for Harry Neher, Louis Neher, and John Neher.

*David F. Anderson,* for William Oliver and Bertha Oliver, his wife, Albert Kastner and Gertrude Kastner, his

wife, John Hoffhinz and Daisy Hoffhinz, his wife, and George Wehner and Lillian Wehner, his wife.

THE CHANCELLOR: Joseph F. Neher, in and by his last will and testament, devised to his housekeeper, Sarah V. Woodruff, two pieces of real estate located in the city of Wilmington in fee simple. One of these properties, known as 1712 West Fourth street, was his residence. After devising the two properties to Mrs. Woodruff, his will proceeded as follows:

"I also give and bequeath unto my said housekeeper, all the furniture, household furnishings and personal property of any kind whatsoever in the said above mentioned property, known as No. 1712 West Fourth Street, in the said City of Wilmington, absolutely and forever.

"I also give and bequeath unto my said housekeeper, absolutely and forever, the sum of Five Hundred Dollars, to be paid to her by my Executor as soon as he conveniently can do so after my death, but at all event within one year of my death."

He then made specific devises of sixteen other parcels of real estate and at the close of the seventh item of his will made a gift to his step-brothers of "any other property that I may have at the time of my death, absolutely and forever in fee simple." At the time of his death he possessed "other property" consisting of $127.75 in cash, one Home Owners Loan Corporation Bond for $1,325.00, an automobile and a diamond ring.

When he died, the house known as 1712 West Fourth street, mentioned in the devise and bequest to Mrs. Woodruff, in addition to furniture and household furnishings, contained $689 in a can in the bedroom of the deceased, seventy-five shares of the common stock of S. S. Kresge Company of Michigan, two hundred and fifty shares of common stock of New Jersey-Delaware Brewing Company, and certain articles of jewelry and wearing apparel which had belonged to the testator.

The question which the bill presents is whether the cash, shares of stock, jewelry and wearing apparel found

on the premises at 1712 West Fourth street are embraced in the bequest to Mrs. Woodruff of "all the furniture, household furnishings and personal property of any kind whatsoever in the said above mentioned property, known as No. 1712 West Fourth Street. * * *"

Testimony was admitted to show that at the time the will was made, the testator had some cash in the residence, and that he was accustomed to keep money in a large amount in the house. There was testimony also showing that the testator had the shares of stock in his home both before and after the will was made. This testimony was properly admitted to show the state of the testator's personal property and the place of its location as an aid to interpretation. *Sussex Trust Co. v. Polite, et al.,* 12 *Del. Ch.* 64, 106 *A.* 54; *Knight v. Knight,* 5 *Boyce,* 570, 96 *A.* 32; *Carson v. Doe ex dem. Hickman,* 4 *Houst.* 328. But evidence which was tendered to show by the testator's statements what he intended by the language of the will was rejected. *Sussex Trust Co. v. Polite, et al., supra; Hearn, et al., v. Ross, et al.,* 4 *Har.* 46.

Generally speaking it is a loose and rather careless way for a testator to designate the personal property he wishes to bequeath as being all that may be found composing the contents of a house, bureau, etc. Where such method of designation is employed, in many cases questions are almost inevitably bound to arise as to just how much the testator meant the word "contents" or its equivalent to be understood to embrace. Where, however, such manner of description is employed, the courts have held, in the absence of a context indicating otherwise, that the general scope of the testator's language is to be given its full effect. *In re Robson, L. R.* (1891) 2 *Ch.* 559; *Richmond v. Vanhook, et al.,* 38 *N. C.* 581; *Gaff v. Cornwallis,* 219 *Mass.* 226, 106 *N. E.* 860; *Matter of Thompson,* 217 *N. Y.* 111, 111 *N. E.* 762; *Lansburgh v. Lansburgh,* 59 *App. D. C.* 201, 37 *F.*(2d) 997; *Succession of McBurney,* 165 *La.* 357, 358, 115 *So.* 618; *Bromberg v. McArdle, et al.,* 172 *Ala.* 270, 55 *So.* 805, *Ann.*

*Cas.* 1913*D*, 855. As to the time to which the description relates, the general rule is that it relates to the time of the death of the testator. *Matter of Thompson,* 217 *N. Y.* 111, 111 *N. E.* 762; *In re Robson, L. R.* (1891) 2 *Ch.* 559; *Gaff v. Cornwallis,* 219 *Mass.* 226, 106 *N. E.* 860; *Richmond v. Vanhook,* 38 *N. C.* 581.

But solicitors representing John, Louis and Harry Neher contend that there is context in the will now before the court which shows that the property in question was not meant by the testator to be included in the phrase "personal property," etc. The context referred to is the immediately preceding language which refers to "furniture and household furnishings," from which, it is argued, we are to infer that the other personal property which the testator had in mind was property only of a like kind and character as furniture and household furnishings. In other words, they rely on the doctrine of *noscitur a sociis,* more familiarly referred to as the doctrine of *ejusdem generis,* to narrow the broad import of the general description.

This doctrine is a well recognized one in the law of interpretation. The reason underlying the doctrine is (adjusting its statement to the facts of this case) that if the testator intended the phrase "personal property" to be as broadly embracing as the magnitude of its general scope might allow, the enumeration of particular kinds of such property would be entirely superflous. Hence it is to be inferred that the particular enumeration indicates an intent to restrict the general description to the types enumerated. If, then, the doctrine is here applicable, the property in question does not pass to Mrs. Woodruff, since it is not of the kind of personal property which the testator's particularizations, viz., "furniture and household furnishings," had illustrated. In the following cases it was held that personal property found located in the place described in the will did not pass to the legatee, notwithstanding the generality of description, where the general description was coupled with a specific enumeration and the property in

question could not be regarded as of the kind specifically enumerated: *Andrews v. Schoppe*, 84 *Me.* 170, 24 *A.* 805; *Webster v. Wiers*, 51 *Conn.* 569; *Benton v. Benton*, 63 *N. H.* 289, 56 *Am. Rep.* 512; *Ludwig v. Bungart*, 33 *Misc.* 177, 67 *N. Y. S.* 177; *Fenton v. Fenton*, 35 *Misc.* 479, 71 *N. Y. S.* 1083; *Peaslee v. Fletcher's Estate*, 60 *Vt.* 188, 14 *A.* 1, 6 *Am. St. Rep.* 103; *Creamer v. Harris*, 90 *Ohio St.* 160, 106 *N. E.* 967, *L. R. A.* 1915C, 653, *Ann. Cas.* 1916C, 1137; *In re Gibbons' Estate*, 224 *Pa.* 37, 73 *A.* 183. This rule of interpretation is the more easily applied in cases where there is a residuary bequest; for if there is no residuary clause, the presumption against intestacy in face of a will operates more favorably towards allowing the general description an unrestricted meaning. *Peaslee v. Fletcher's Estate, supra; Matter of Reynolds*, 124 *N. Y.* 388, 26 *N. E.* 954; *Creamer v. Harris, supra.* But even when there is no residuary clause, the doctrine of *ejusdem generis* has not always been refused recognition, notwithstanding its application will result in partial intestacy. *Re Delaney's Will*, 133 *App. Div.* 409, 117 *N. Y. S.* 838, affirmed without opinion, 196 *N. Y.* 530, 89 *N. E.* 1098. In the instant case there is a general residuary clause and the doctrine is therefore the more readily applied. But as the absence of a residuary clause will not always defeat the application of the rule, so, conversely, the presence of such a clause will not always compel its application. The question of intent is controlling in any case.

Where general words following after an enumeration are found in a residuary clause, it has been held that the doctrine of *noscitur a sociis* is not applicable. *Matter of Reynolds, supra.* But the words here in question are not found in a residuary clause.

Of course the doctrine of *ejusdem generis* as an aid to interpretation is always subordinate to the cardinal principle that a will is to be construed according to the intent of the testator as the same is gathered from the document as a whole. The doctrine does not express a rule of prop-

erty. *Taubenhan, et al., v. Dunz,* 125 *Ill.* 524, 17 *N. E.* 456. It is of value only as an aid to the discovery of intent. If, therefore, the intent of the testator as disclosed by his will in its entirety is shown to be contrary to that which the doctrine in question would suggest, then the testamentary intent will prevail and the rule will not be applied. *Bromberg v. McArdle, et al.,* 172 *Ala.* 270, 55 *So.* 805, *Ann. Cas.* 1913D, 855; *Taubenhan, et al., v. Dunz, supra; In re Johnston,* 26 *Ch. Div.* 538, 53 *L. J. Ch.* 645.

If the doctrine of *ejusdem generis* is applicable to the interpretation of this will, then the clause in question would be paraphrased thereby about as follows: "All the furniture, household furnishings and other personal property of like or similar kind in the said above mentioned premises." Now the difficulty with that result is that the testator used language which very plainly to my mind repudiates it. Rather than confine the general expression "personal property" to restricted kinds, as the rule of *ejusdem generis* would do, the testator disclosed an intent that it should embrace personal property of all kinds, without restriction, that might be on the premises. His language was "personal property of any kind whatsoever." A more comprehensive expression can hardly be phrased. We have then a case where the result to which the doctrine of *ejusdem generis* would lead us is at pronounced variance with the testator's plainly expressed intent. When such is the case, the testamentary intent, as before stated, must prevail.

Construing the clause, as we must, as though the restrictive classification had not been used, this case is even stronger in favor of allowing "personal property" the full sweep of its significance than are those cases cited at an earlier point in this opinion in which it was held that a descriptive word of general import such as "contents" of a house, etc., without such an enlarging phrase as "of any kind whatsoever" as a modifier, carries all the personal property therein found.

If it be said that, notwithstanding the foregoing, "personal property of any kind whatsoever in the said above mentioned property" ought in reason to be restrained to such types of personal property as it is the practice of people to keep in their residences, and that money and stocks are not of such types, the answer is, first, such a view would be hazarding a guess as to this testator's meaning without language to support it; and, second, the evidence shows that not only when he died, but as well when the will was written, his own practice was contrary to what is assumed to be the ordinary practice of others.

There is nothing of interpretative value to be derived from the presence of a general residuary clause. The clause finds property other than that claimed by Mrs. Woodruff upon which to operate, and so can have no force to suggest that the testator did not intend the property on the premises to go to Mrs. Woodruff.

The fact that the testator bequeathed $500 in cash to Mrs. Woodruff is not significant as showing that he intended her to have no more in the form of money. In some of the cases hereinbefore cited, notwithstanding there was present the similar circumstance of a general cash legacy, the contents, though consisting partly of cash or investments, nevertheless passed to the legatees. It may well have been that the testator intended Mrs. Woodruff to have at least $500 in cash, and such other cash and investments as would be resolved into definiteness by the disclosure of what he had in his home when he died.

Decree in accordance with the foregoing.