BRINCKERHOFF et al. v. FARIAS et al.

(Supreme Court, Appellate Division, Second Department.   June 22, 1900.)

**1. Executors—Accounting.**
Where plaintiffs, as executors, invested certain funds in the rope business, and negligently failed to collect interest thereon, and the amount so invested was lost, they must account, as executors, for the sum so invested, with interest thereon, and also for rents received from the real estate of the executor which was leased by them for the purposes of the business.

**2. Same—Income from Estate—Proportions of Devisees.**
Where the provisions of a will devising real estate create an equitable conversion of it into money, which is to go to two persons in specified amounts, the proportions of these amounts to each will determine the proportion of the rents derived from such estate to which each is entitled.

**3. Same—Bequests—Household Effects.**
A bequest of "all the rest of my plate and household effects" will pass wines found in the house.

**4. Same—Guardian's Compensation.**
Where a probate court awards compensation to a guardian ad litem, it must be made payable out of the interest of the ward, and not out of the general estate.

Appeal from judgment on report of referee.

Action by Edwin R. Brinckerhoff and Frank T. Wall, as executors and trustees of Michael W. Wall, deceased, against Marie C. Farias, Francesca J. Wall, William F. Wall, Catherine Hancox, and others, to procure a judicial settlement of plaintiff's accounts.   From a judgment entered on the report of a referee, and from an interlocutory order requiring payment of an allowance out of the general estate to the guardian ad litem of Francesca J. Wall, plaintiffs and defendant William F. Wall appeal.   Modified.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Isaac N. Mills, for appellants.

Arthur H. Van Brunt (Adrian H. Larkin, on the brief), for appellant William P. Wall.

William C. Wallace, for respondent Marie C. Farias.

William C. Wallace (John McG. Goodale, on the brief), for respondent William C. Wallace.

HIRSCHBERG, J.   This is an action to procure a judicial settlement of the accounts of the plaintiffs as the executors and trustees of the last will and testament of Michael W. Wall, deceased.   The testator died February 26, 1888, leaving a will, which was executed June 29, 1887, and which was admitted to probate in New York county March 28, 1888, whereupon the plaintiffs qualified and entered upon, and have ever since been engaged in the execution of, their trust.   By the will, among various other provisions, the sum of $75,000 was bequeathed to the executors in trust for the testator's widow, the defend-

ant Marie C. Farias, for life, the principal to be divided at her death between his two children, the defendants William F. Wall and Francesca J. Wall, equally. The sum of $1,500 was given to the Greenwood Cemetery, in trust for the cultivation of certain lots and the preservation of monuments. The residue of the estate was also given to the executors in trust to convert it into money, and to invest and hold it one-half for the benefit of each of said children under terms and conditions not necessary to be specially considered, excepting that the executors were authorized to invest all of the residuary share of the son William F. Wall in the rope business, excepting the sum of $20,000. At the time of his death the testator was a member of the firm of William Wall's Sons, which firm was composed of the testator, the plaintiff Frank T. Wall, and one Eliza A. Wall, and was and had been for a number of years engaged at Brooklyn in the rope business, manufacturing and selling, and occupying real estate owned equally by the testator and by the plaintiff Frank T. Wall. There appears to have been no written lease, but the firm was then paying, and had been paying for some years, the sum of $12,500 annual rent. The National Cordage Company was organized in July, 1887, and on August 1, 1887, the firm executed a lease of the factory to the company for 99 years, at the nominal rent of $10 per year, and on the same day received from the company a sublease at the same nominal rent for a period of 33 years, providing for renewals to make a term of 98 years in all. This was all done in pursuance of a scheme designed to consolidate the business of the several leading firms engaged in the manufacture of rope into a corporate combination or trust, but leaving to each firm ostensibly the general management and control of its individual property and business. The testator became the vice president of the cordage company, and the plaintiff Frank T. Wall one of its directors. On the 3d day of April, 1888, the firm of which the testator had been a member was reorganized under the same name and by written articles of co-partnership, the members of the new firm consisting of Eliza A. Wall, the plaintiff Frank T. Wall individually, and the plaintiffs as executors and trustees of the deceased. In organizing the new firm Eliza A. Wall contributed her interest in the old firm and an additional sum in cash, Frank T. Wall contributed his interest in the old firm, and the plaintiffs contributed, or agreed to contribute, the equal one-half of the testator's residuary estate held or to be held by them in trust for the defendant William F. Wall, less the sum of $20,000. At that time the value of the interest of the testator in the old firm was settled and liquidated at the sum of $277,344.18. The co-partnership agreement provided that legal interest should be allowed on the contributions of capital before any division of profits. The new firm appears to have agreed to pay to the plaintiffs, as trustees, in installments, the amount of the testator's interest in the old firm as above stated, excepting so much thereof as was to remain in the business as a part of the contribution of the plaintiffs from the trust share of the defendant William F. Wall, and it also agreed to pay interest on the amount so to be paid in installments from the date of the formation of the new firm until the date of the respective payments. In other

words, the firm agreed to pay interest to the plaintiffs upon so much of the testator's share or right in the firm as they should be entitled to withdraw, computed on the amounts as withdrawn from time to time, and covering the period to the respective dates of withdrawal. The rate of interest to be paid is in dispute, but the principal sum appears to have been paid in full. In May, 1893, the National Cordage Company became insolvent, and the firm became and was so far involved that it necessarily ceased to do business. The defendant William F. Wall's trust share, so far as it has been invested in the business, has been wholly lost. The testator's interest in the real estate was conveyed to the cordage company by the plaintiffs on July 28, 1893, and they have been charged by the learned referee with the value of the fee estimated as subject to the unexpired term of the 99-year lease at a nominal rental. No question is raised, however, as to either the loss of the portion of the defendant William F. Wall's trust share or of the charge against the plaintiffs by reason of the loss of the testator's interest in the real estate, nor, indeed, as to the general management of the estate by the plaintiffs. Certain items of the account as settled by the referee are in dispute, and will be considered in the order in which they have been presented to this court.

In the articles of co-partnership of the new firm no provision is made for the payment of rent to the owners of the real estate, viz. the plaintiff Frank T. Wall individually and the estate of the testator; nor does there appear to have been any express agreement that rent should be paid other than the $10 a year already mentioned. Nevertheless, during the lifetime of the testator the old firm continued to pay the sum of $12,500 rent per annum, and the new firm did the same down to about the period when it discontinued business. The plaintiff Frank T. Wall, as the manager of the firm, paid one-half of each quarter's rent to himself individually, and the other half of each quarter's rent to the plaintiffs as executors and trustees. The amount so received by the plaintiffs as rent was $31,250, and it has been regularly credited on the books of the estate as rent collected for the use of the factory property by the firm. The plaintiffs, however, insist that they had no valid legal claim against the firm warranting the collection of this rent, and that it should not, therefore, be charged to them as rent, but that they should be permitted to use the money to supply other items charged to them on the accounting, and representing delinquencies committed by them in the management of the estate. The learned referee has charged them with the rent collected as rent, and in this, I think, he was clearly right. Independently of the question whether or not the firm was legally compellable to pay rent, the ract remains that they did voluntarily pay it, and the plaintiffs have received it, and the latter are therefore legally compellable to account for it as funds belonging to the estate and on hand.

The plaintiffs failed and neglected to collect interest on the unwithdrawn balances of the amount representing testator's interest in the firm, and such interest has been charged to them in the sum of $21,-822.80. This amount is arrived at by computing the interest at 6 per cent., while the plaintiffs assert that it should only be computed

at the rate of 5 per cent. The evidence supports the referee's finding that the interest which the firm agreed to pay was to be computed at the legal rate. The interest is credited to the estate on the books of the firm at 6 per cent., and the strong inference deducible from that act has not been overcome by the oral evidence given on the trial. At the time of the dissolution of the firm, the interest account credited to the estate on the books of the firm largely exceeded the amount which has been charged to the plaintiff. Notwithstanding the fact that the firm paid all its proper debts, and had funds sufficient to pay the interest in question, the plaintiffs apparently made no attempt to collect it, and have given the liquidating partner of the firm since the dissolution a receipt releasing the firm from liability on the obligation. The charge against the plaintiffs at the rate of 6 per cent. is therefore proper as representing the sum which the beneficiaries have lost by their neglect.

The referee has found as a fact that the amount invested by the plaintiffs and lost in the business of the firm, taken from the residuary share of the defendant William F. Wall, is $90,258. The accounts as filed by the executors show that the amount is $80,422.09, and the executors have testified that this amount is correct. In reference to this question the learned referee gives in his opinion the following statement of his reasons for discrediting the accounts of the plaintiffs in this particular:

"By a mass of evidence which seems to me to be unanswerable, the special guardian has shown that $90,258 (out of a total of $277,000) remained unpaid to the estate of Michael Wall at the time of the dissolution, in 1893, of the firm of William Wall's Sons. A calculation made in accordance with the provisions of Michael Wall's will, and based upon the conceded cash assets of the estate, including the agreed-upon value of the testator's interest in the firm, shows that practically this very sum—or, to be exact, $90,794.57—could legally have been left invested by these trustees in the rope business for the benefit of William F. Wall. By the new articles of partnership, made after Michael Wall's death, these plaintiffs agreed with their co-partners to invest in the firm of William Wall's Sons, for the benefit of Wm. F. Wall, all the trust funds in their hands that the trust instrument permitted them to so invest. Notwithstanding these facts, the plaintiffs, in their accounts, show: (1.) That they had left invested in the rope business for the benefit of William F. Wall, $80,000, instead of $90,000; and (2) that this was all the money of the estate that was lost at the time of the cordage failure of 1893. As to this second claim of the plaintiffs—that only $80,000 of the estate's funds was unwithdrawn from Wm. Wall's Sons and lost, at the time of the firm's dissolution—an abundance of evidence absolutely disproves it, and, as I have said, proves beyond question that the sum so lost was $90,258.00. If, as plaintiffs claim, they only invested $80,000 in the firm for the benefit of William F. Wall, I should be compelled to charge them with a loss to principal of about $10,000, for that sum, in addition to $80,000, certainly remained unwithdrawn from Wm. Wall's Sons at the time of the dissolution. The counsel for William F. Wall, while he does not admit, can scarcely be said to deny, that this additional sum of $10,000 was lost, and should be accounted for. His position is, substantially, that $80,000 is all that was left invested for his client, and that, if this additional sum is due to the estate, William F. Wall should get the same benefit from its recovery as Francesca J. Wall. But I am convinced that the whole sum of $90,258 lost in cordage had been left in that business by the trustees for the benefit of William F. Wall, in the unfortunate, but apparently perfectly legal, exercise of their discretionary powers under the will. The mere assertion of the trustees that the amount invested for Wm. F. Wall

was $80,000, not $90,258, is, in my mind, overcome by the fact that under the will they were permitted to invest the latter sum for William F. Wall's benefit in the rope business; that they agreed in the articles of partnership to so invest for William F. Wall all that they legally could invest; and that the amount of the estate's capital lost in the rope business was $90,258.00,—almost precisely the sum which the will permitted these plaintiffs to invest, and which, in the manner stated, they agreed to invest, for the benefit of William F. Wall. I therefore sustain the position of the special guardian in respect of the amount invested for the benefit of William F. Wall in the firm of William Wall's Sons, and which was lost in the cordage failure of 1893."

In the books of account of the firm, and in the balance sheet as made up at or about the time of the dissolution, the undrawn balance owing to the estate appears to be over $90,000, and, as these accounts were actually kept by the plaintiffs, they furnish competent evidence against their present contention. There is no direct evidence in the case tending to show the investment by the plaintiffs of any portion of the trust share of Francesca J. Wall in the rope business, and, as no authority existed for such investment, and it appears to be conceded, or, at all events, undisputed, that the sum of $90,258 of the principal of the estate was in fact invested and lost in the business, the referee's finding that it was all derived from William F. Wall's share is so far supported by the evidence as to justify, if not to require, its affirmance by this court.

The sum of $31,250 of rent collected has been apportioned or divided between the defendants William F. Wall and Francesca J. Wall as income, and in proportion to the amount of their respective trust funds, viz. 15 per cent. and a fraction to William F. and 84 per cent. and a fraction to Francesca J. The learned counsel for William F. insists, and argues with considerable force, that this is error, and that the rents collected should be divided between himself and his sister equally. The fee of the real estate was not invested in the business of the firm, but was included in the residuary devise. I know of no principle which would permit the division equally between the two residuary trusts of the income arising from its use, which would not apply with like force to the interest received from the firm, or charged as if received, on the unwithdrawn balances, or to the general items of income received from the personal investments. The provisions of the will create an equitable conversion of the real estate, no specific property or securities have been set apart for the respective trusts for the children separately, excepting the investment in the rope business, and the income derived by the plaintiffs from the assets which make up the corpus of the residuary estate should be divided in proportion to the rights of the beneficiaries in the principal. On any other theory the defendant William F. Wall would earn the same income on a share in the principal of the residuary investments amounting to the sum of $20,111.33, as the defendant Francesca J. Wall would do on a share in such investments which amounts to the sum of $110,369.33.

The testator, by his will, after disposing specifically of various articles of personal property in his dwelling house made this bequest to the defendant Marie C. Farias, viz.: "I give and bequeath unto my wife, Marie J. Chaffee Wall, all the rest of my plate and household ef-

fects." There were some wines in the house, which have been sold for $426.40, and it is contended that they did not pass under the terms of the bequest. The referee has held that they do, and in this he is right. In re Bourne, 58 L. T. R. (N. S.) 537; Cole v. Fitzgerald, 1 Sim. & S. 189; 1 Jarm. Wills, p. 758u.

An allowance of $3,000 was made to the guardian ad litem, payable out of the general estate. In Re Farmers' Loan & Trust Co., 49 App. Div. 1, 63 N. Y. Supp. 227, this court held that an allowance to a special guardian made by a surrogate in an executor's accounting must be made payable out of the interest of the ward, and not out of the general fund. The court of appeals, in Re Robinson, 160 N. Y. 448, 55 N. E. 4, held that a surrogate's court has no power to award a special guardian, even when appointed on its own motion to represent an infant party to an executor's accounting, any compensation for his services out of the general estate of the decedent in excess of the costs authorized by the Code of Civil Procedure. The reasoning upon which these decisions are based is as applicable to the case of a guardian ad litem appointed to represent an infant party in an action for an executor's accounting brought and conducted in the supreme court. The case of Weed v. Paine, 31 Hun, 10, merely decides that the provisions of the Code relating to allowances in actions do not limit the court to the sum of $2,000 where they may be made to both the plaintiff and the defendant. But the allowance in question was not granted as an extra allowance in the action. Such extra allowance could not be made, as no answer was served setting up a defense. Defendorf v. Defendorf, 42 App. Div. 166, 59 N. Y. Supp. 163. The allowance was made as compensation to the guardian ad litem for services rendered to the infant defendant Francesca J. Wall, and, while entirely reasonable and proper, and certainly well earned in this case, it can only be charged to her share or interest in the testator's estate.

The judgment appealed from must therefore be modified by making the allowance of $3,000 to the guardian payable out of the share or interest in the estate of the infant defendant Francesca J. Wall, and, as so modified, affirmed, with costs to all the parties to this appeal, payable out of the estate. All concur.