(35 Misc. Rep. 479.)

### FENTON v. FENTON et al.

### WHALEN et al. v. SAME.

(Supreme Court, Special Term, New York County. July, 1901.)

1. TRUSTS—CREATION—WILLS—CONSTRUCTION.

    Where a will directed the executors, as trustees, "to invest and keep invested so much of my said estate as may be personal, and collect and receive the rents, issues, incomes, and profits of so much of my estate as may be real property, and pay over, after deducting the lawful expenses, the net income arising from my property, both real and personal, to certain beneficiaries named," such provision as to the realty creates a valid express trust of the third class, authorized by Laws 1896, c. 547, art. 3, § 76, authorizing the creation of an express trust to receive the rents and profits of real property, and apply them to the use of any person during the life of that person, or for any shorter term, subject to the provisions of the law relating thereto.

2. SAME—PERPETUITY.

    The validity of the trust created for two lives in being only is not affected by the fact that a number of persons may be its beneficiaries during the term.

3. WILLS—CONSTRUCTION.

    A testator, who had given legacies amounting to $36,000, married again, and by a codicil to his will declared that it was his desire that

his will, except as limited by the codicil, should continue in full force and effect. He then gave his second wife his dwelling house, "the furniture," and all contents thereof. A safe in the house was found to contain securities to the extent of $114,000, and besides this he had only $60 of personalty. *Held*, that the second wife was not entitled to the contents of the safe, they not being consonant with furniture, nor included within the terms of the codicil.

4. DOWER—ELECTION.

Where the provisions of a will are not inconsistent with dower, the testator's widow is not put on an election whether she will take dower or under the will.

Actions by Ellen M. Fenton against Dennis Fenton and others, and by John Whalen and others, as executors of the estate of Thomas Fenton, deceased, against Ellen M. Fenton and others, for dower, and for the construction of decedent's will. Judgments for plaintiffs.

Stern & Rushmore (Eldon Bisbee, of counsel), for Ellen M. Fenton. John P. Dunn, for executors of Thomas Fenton. Patrick H. Whalen, for Dennis Fenton. Vincent P. Lynott, for Michael Cronican.

CHESTER, J. These actions may be considered together. The first is one brought by the widow of Thomas Fenton, deceased, for dower. The second is brought to procure the construction of his will. He died September 26, 1899, seised of premises known as "502 West One Hundred and Sixty-First Street, New York," where he resided at the time of his death; of another house and lot situated on the southwest corner of Amsterdam avenue and West 161st street; and also of two vacant lots on the northwest corner of 169th street and Audubon avenue, in the city of New York. He left no children. He left a will bearing date the 26th day of August, 1897. In this will, after making provision for his debts, funeral expenses, and expenses of administration, and giving an aggregate of $36,400, in 15 legacies, to various collateral relatives, friends, and charities, he gave all the residue of his estate to his executors in trust, by the following clause, viz.:

"Seventeenth. All the rest, residue, and remainder of my estate, both real and personal, I give, devise, and bequeath to my executors hereinafter appointed, in trust, nevertheless, for the following uses and purposes: To invest and keep invested so much of my said estate as may be personal, and to collect and receive the rents, issues, incomes, and profits of so much of my estate as may be real property, and to pay over, after deducting all lawful expenses, the net income arising from my said property, both real and personal, equally, share and share alike, to my sister-in-law, Betsy Fenton, of Tenniscart, county Waterford, Ireland, and my sister, Mrs. Terrence Ahern, of Lismore, county Waterford, Ireland, during the lifetime of my niece Julia Ahern and of my nephew Michael Ahern, children of Mrs. Terrence Ahern; and it is my will that, in case either or both my sister-in-law, Betsy Fenton, and my sister, Mrs. Terrence Ahern, should die before Julia Ahern and Michael Ahern are both deceased, then the heirs at law of my said sister-in-law or my said sister so dying shall take of the net income of my said estate the share of the one so dying per stirpes, and not per capita; and on the death of both Julia Ahern and Michael Ahern I direct my executors, or the survivor of them, to pay over the whole of my said residuary estate to my nephew Patrick Fenton, son of Betsy Fenton, of Tenniscart, county Waterford, Ireland, absolutely and forever; and in the event that

my said nephew Patrick Fenton should die before the death of the said Julia and Michael Ahern, then, and in that event, I direct my executors hereinafter appointed upon the death of said Julia Ahern and Michael Ahern to pay over the whole of my said residuary estate absolutely and forever to the lawful issue of my said nephew Patrick Fenton, if any such surviving there be at the time of the death of the said Julia and Michael Ahern as aforesaid; and, in the event that there be no issue of my said nephew Patrick Fenton surviving at the time of the death of the said Julia and Michael Ahern, then it is my will, and I hereby direct, that my said executors hereinafter appointed pay over the whole of my said estate on the death of the said Julia and Michael Ahern as aforesaid to the heirs at law of my said nephew Patrick Fenton, son of Betsy Fenton, absolutely and forever."

After making this will, and on the 12th day of October, 1898, he married, as a second wife, the plaintiff in the first-entitled action. Four days before his death he made a codicil, of which the following is a copy:

"Know all men by these presents, that I, Thomas Fenton, now residing at No. 502 West 161st street, New York City, having heretofore made a last will and testament, which I wish to have continue in full force and effect, excepting that by and in the codicil as hereto set forth I do hereby make, publish, and declare this instrument to be as and for a codicil to the aforesaid last will and testament. First. Any grant, devise, or bequest that I may have made in said last will and testament to any person or persons, in trust or otherwise, of the premises No. 502 West 161st street, New York City, and all the contents of every kind and nature therein contained, I do by this my codicil revoke, nullify, and make void, and I now will that the said premises No. 502 West 161st street, and the furniture and all the contents thereof, together with the strip of land on the easterly side of said house and lot, being five feet front and rear, and running the depth of twenty-five feet, shall descend to my wife, Ellen M. Fenton, to her own use absolutely and forever; and I therefore now give, devise, and bequeath to my said wife, Ellen M. Fenton, the aforesaid premises, with the said strip of land, and all the contents of said building and premises, to her own use absolutely and forever. In witness whereof, I have hereunto set my hand and seal this 22nd day of September, 1899.     Thomas Fenton. [L. S.]"

On the day before his death he made a second codicil, wherein he refers again to his last will and testament, which he wishes "to have continue in full force and effect." In this codicil he nullifies the devise to any person, in trust or otherwise, of his house and lot situated on the southwesterly corner of Amsterdam avenue and West 161st street, New York, and devises the same to his nephew Dennis Fenton "absolutely and forever." After his death the furniture in the residence devised by the codicil to his wife was appraised at the sum of $50, and his wearing apparel and jewelry at the sum of $10. Among the furniture was a small safe. Upon this being opened, it was found to contain a United States bond for $1,000; several bonds secured by mortgages on real estate, aggregating $20,000 in amount; 30 separate savings bank deposit books, showing deposits of upwards of $80,000; a pass book in another bank, showing deposits of upwards of $10,000; and cash to the amount of $2,704. This personal property had a value, all told, of $114,368.76. The widow insists that it was the intention of the testator, by the first codicil, in devising to her the premises No. 502 West 161st street, and bequeathing to her "the furniture and all the contents thereof," to give her all of the personal property found in the safe in that house, as well as the furniture. She also alleges that the trust mentioned in the seventeenth item of

the will is void for uncertainty and indefiniteness, that it is not one for a purpose for which an express trust may be created, and that there is an unlawful suspension of the power of alienation.

An examination of the provisions of the seventeenth clause convinces me that the trust there created is a valid one. The statute authorizes the creation of an express trust "to receive the rents and profits of real property, and apply them to the use of any person during the life of that person, or for any shorter term, subject to the provisions of the law relating thereto." Laws 1896, c. 547, art. 3, § 76. The clause of the will to be construed follows the language of this statute very closely. The gift to the executors in trust is "to collect and receive the rents, issues, incomes, and profits of so much of my said estate as may be real property, and to pay over, after deducting all lawful expenses, the net income arising from my said property, both real and personal," to the beneficiaries therein named. It is not necessary that the purpose of a trust should be declared in the exact words of the statute. It is sufficient that a purpose within the statute is clearly embraced within the language used. That appears clearly to be the case here. Vernon v. Vernon, 53 N. Y. 351–359; Donovan v. Van De Mark, 78 N. Y. 244, 248. Nor is there an unlawful suspension of the power of alienation. The trust is limited, in any event, to two lives in being,—that is, to the lives of Julia Ahern and Michael Ahern,—and therefore does not offend against the provision of the statute in that respect. The fact that a number of persons may be beneficiaries during the continuance of the two lives, and during which the power of alienation is suspended, does not impair the validity of the trust. Woodgate v. Fleet, 64 N. Y. 571; Bailey v. Bailey, 97 N. Y. 460. I am unable, also, to find any element of indefiniteness or uncertainty in the trust. The language is clear. The trust is to continue during the lives of but two persons, Michael and Julia Ahern, with a beneficial interest in a sister-in-law, Betsy Fenton, and a sister, Mrs. Terrence Ahern, and upon their deaths to their respective heirs at law, with remainder to a nephew, Patrick Fenton, with suitable provisions providing for the contingency of the death of Patrick prior to the death of Michael and Julia. I conclude, therefore, that there is nothing here that contravenes the statute, and that the trust is valid.

The next question to be determined is whether the widow is entitled, under the bequest to her of the furniture and the contents of the house, to take the bonds, mortgages, bank books, and cash found in the safe in the house, to the exclusion of all of the several legatees named in the will as originally drawn. It is a primary rule of construction that the intention of the testator must control, if that can be gathered from the will and the surrounding circumstances. To get at the intention, the entire will must be taken into account, and effect must be given to all its provisions, if that is possible. Here the testator had made a will before his marriage to his second wife. In that he had given substantial bequests to numerous near relatives and friends and to several charities. Practically his entire personal estate was represented by the cash, bank books, and securities found in the safe. In the first codicil, made after his marriage, in which

he willed the house where he lived to his wife, "and the furniture and all the contents thereof," he refers to his last will and testament, and expresses his wish to have that "continue in full force and effect." He also expresses the same desire in the second codicil in referring to his will. If, under the term "contents," used in the codicil, all his personal property found in the safe is held to go to his widow, then no force or effect is given to his will as originally made, for there will be no estate left to pay any of the legacies therein given, or to create the trust estate therein provided for. His solicitude to have his will kept in full force and effect, expressed as it was in both of these codicils, is very convincing in showing that the testator did not intend, by the use of the word "contents," to give his entire personal estate to his widow, and thus leave in the hands of his executors no fund which could be applied by them to the legacies given or the trust created in the will. It is true that the word "contents" is broad enough to include the bonds, mortgages, bank books, and cash; and, while the court might be justified in giving it that meaning to prevent intestacy, yet where, as here, there is a residuary clause, and, consequently, no question of intestacy involved, that phase of the case may be eliminated from consideration in construing this will. The testator's intent, not to give the word the broad meaning claimed for it by his widow, being so manifest from an examination of the will and codicils together, the case might properly be resolved against her for that reason alone. But the current of authority in construing wills very similar in character to this seems to me to be conclusive against her contention. The rule, in brief, as well stated by the learned justice who decided the recent case of Ludwig v. Bungart, 33 Misc. Rep. 177, 67 N. Y. Supp. 177, is "that in the construction of wills, when certain things are mentioned or enumerated in a bequest, followed in the same clause by a more general description, that description is taken to cover only things of a like kind with those mentioned or enumerated; and this is so because it is presumed the testator had only things of that class in mind. Jarm. Wills, 709, and note; Dole v. Johnson, 3 Allen, 364; Bills v. Putnam, 64 N. H. 554, 15 Atl. 138. The general phrase, 'contents of house,' following the specific one of 'household furniture,' must, therefore, be confined to matters ejusdem generis." In re Reynolds, 124 N. Y. 388, 26 N. E. 954; Ball v. Dixon, 83 Hun, 344, 31 N. Y. Supp. 990, are cases to the same effect. To carry into effect the testator's intent, and to give force to the authorities referred to, it must be held that the personal property, cash, and securities found in the safe go to the executors, to be disposed of as provided in the will, and not to the widow.

With respect to the remaining question, I discover nothing in the will or codicils which is inconsistent with the widow's claim for dower. The provision for her benefit is not made in lieu of dower, and, although she has entered into possession of the house devised to her, that fact is not a waiver on her part of any rights given to her by law. She was not driven to an election between the provision contained in the will for her benefit and her dower. It is urged here that, because the testator specifically devised one parcel by the last

codicil to his nephew Dennis Fenton "absolutely and forever," and that he devised all of the residue of his estate upon certain trusts, these provisions are inconsistent with dower. I cannot see that that is so. The fact that he devised the house to Dennis Fenton is not of itself inconsistent with dower, for the reason that the testator had no control over the dower, and could not dispose of that by will any more than he could have disposed of the right of a mortgagee of the property. In either event, the devisee must take it subject to the incumbrance. Closs v. Eldert, 30 App. Div. 338, 51 N. Y. Supp. 881. Nor can the terms "absolutely and forever," used by the testator in the devise of this real estate to Dennis Fenton, be effective to defeat his widow of her dower therein. These words characterize the quality of the estate which the testator devised, and merely show an intention to give an absolute fee, as distinguished, for instance, from a life estate, or from some other qualified fee, and cannot be held to devise something which the testator had no right to give. Neither is the devise to the executors in trust of all of the residue of the testator's estate inconsistent with the right of dower. The right of dower was no part of his estate, but is an estate which the law gives to the widow free from the control of the husband, and this estate can only be taken away from her by her consent. While he could put her to her election, by the use of proper terms in his will, between her right of dower and a provision for her benefit in the will, yet he has not done so in this instance, and therefore she is entitled to both her dower and the provision made for her benefit. Konvalinka v. Schlegel, 104 N. Y. 125, 9 N. E. 868, 68 Am. Rep. 494; Gray v. Gray, 5 App. Div. 136, 39 N. Y. Supp. 57; Kimbel v. Kimbel, 14 App. Div. 570, 43 N. Y. Supp. 900; Duncklee v. Butler, 30 Misc. Rep. 61, 62 N. Y. Supp. 921.

The stipulations made by counsel in open court as to the correct names of the corporations intended by the testator to be beneficiaries under his will may be given full force and effect in the judgment, as all the parties are of full age. The plaintiff is entitled to judgment for the admeasurement of her dower in the first-entitled action, with costs; and the plaintiffs in the second action are entitled to a judgment construing the will in harmony with this opinion, with costs to the plaintiffs and to all answering defendants, to be paid out of the estate.

Ordered accordingly.