In the Matter of the Judicial Settlement of the Estate of HENRY W. ROBINSON, Deceased.

Surrogate's Court, Clinton County, December 28, 1927.

Surrogate's Court — jurisdiction — Surrogate's Court, under Surrogate's Court Act, § 40, has jurisdiction to compel delivery of any property of estate which is withheld — wills — construction — bequest to widow of " household furniture and furnishings " for life or until remarriage includes right to use any coal and wood which had been provided for household purposes — accounting — widow was not chargeable for coal or wood used by her in her house — widow should reimburse estate for amount of check which she charged to decedent's account — evidence fails to establish gift to widow — widow is entitled to costs under Surrogate's Court Act, § 278.

The Surrogate's Court, under section 40 of the Surrogate's Court Act, has jurisdiction to compel the delivery of any property of an estate which is withheld, or to compel the payment to the estate of the proceeds or value of any property withheld and belonging to the estate.

Decedent's widow who, after being made the life beneficiary of a trust fund, was given the use of decedent's " household furniture and furnishings " for life or until she remarried, is not liable to the estate for coal or wood used by her in her house, for the bequest was absolute and included the right to use any coal or wood which had been provided for household purposes by decedent prior to his death.

The widow, however, should reimburse the estate for the amount of a check which she charged to decedent's account and cashed either on the day decedent died

or on the day thereafter, in the absence of proof that the proceeds of the check were used for the benefit of the decedent.

Furthermore, the widow was chargeable with the sum of $240 where the proof fails to establish her claim that the money came to her as a gift from decedent.

Under the circumstances, costs in this accounting proceeding should be paid to the widow pursuant to section 278 of the Surrogate's Court Act.

PROCEEDING to settle final accounts of executor.

*Allen & Allen* [*Seth S. Allen* of counsel], for William H. Robinson, sole executor.

*Charles H. Signor*, for Ina Robinson, objector.

HARRINGTON, S.   Under the will of the decedent, his widow, Ina Robinson, is made the beneficiary for life, or until her remarriage, of a trust fund of $15,000.   She is further given during her life, or until her remarriage, the use of the decedent's " household furniture and furnishings."   Upon her decease or her remarriage, the principal of said trust fund and said " household furniture and furnishings " become a part of the decedent's residuary estate, which is bequeathed to his four children equally, share and share alike.   The decedent died on August 2, 1926.

The executor's accounts charge the widow with nine tons of coal in the sum of $144.35, and with a quantity of fire wood in the sum of $40.   The evidence indicates that the coal was used by the widow during the winter of 1926–1927 to heat the home occupied by her, and formerly occupied by the decedent.   It appears that only a small quantity of the wood in question has been used by the widow for her own use.   The remainder of the wood is still on the premises.   The executor also charges the widow with $50, being the proceeds of a check signed " Mrs. Henry Robinson," but charged to the account of the decedent, and cashed by her either after banking hours on the day the decedent died or on the day after the decedent died.   The executor further charges the widow with the sum of $240, being part of the proceeds of a certificate of deposit in the name of the decedent, cashed by the widow on August 1, 1926, and deposited to decedent's account, except for the sum so retained by her.   The widow objects to all of these charges made against her.

To pass upon the matters in question will necessitate the adjudication by this court of the issue of whether or not the widow is indebted to the estate, and if so, it will follow that the order of this court must direct a judgment in favor of the estate and against the widow for the amount found due the estate.   It is, therefore, essential at the outset to determine whether this court has jurisdiction in this matter.   Section 40 of the Surrogate's Court Act

defines the jurisdiction of this court. Prior to the enactment of chapter 439, Laws of 1921, and chapter 100, Laws of 1924, this court would not have had jurisdiction of the matters in question. (*Matter of Underhill*, 117 N. Y. 471; *Matter of Hodgman*, 140 id. 421, 430; *Matter of Lang*, 144 id. 275, 278.) Until the above-mentioned amendments to said section, it was held that the word " debts," mentioned in subdivision 4 of said section 40, referred only to debts due from the estate, and was not intended to invest the surrogate with jurisdiction to enforce the payment of an ordinary debt due the estate from a third party. (*Matter of Underhill*, *supra*, 476.) By chapter 439, Laws of 1921, the present 3d paragraph of section 40 of the Surrogate's Court Act was inserted. In *Matter of Wiemann* (119 Misc. 239) Surrogate COHALAN held that the effect of this amendment to said section authorized a Surrogate's Court to render a judgment in favor of the executor against a residuary legatee who had been overpaid. By chapter 100, Laws of 1924, the last sentence of subdivision 4 of said section was added, as follows: " To enforce against a respondent the delivery of personal property, or the payment of the proceeds or value of personal property belonging to or withheld from an estate." It is of interest to note that by this same chapter of the Laws of 1924, section 206 of the Surrogate's Court Act was also amended by authorizing the Surrogate's Court in a discovery proceeding to compel the payment by a third person to the representative of the estate of a sum equal to the value of any property of the estate disposed of by such person, or to impress a trust upon the proceeds of the sale of such property. I find no case of record construing this latter amendment to section 40 of the Surrogate's Court Act. But the language of such amendment is such that I believe this court now has jurisdiction to compel the delivery by this respondent of any property of the estate withheld by her, or to compel the payment by her to the estate of the proceeds or value of any property withheld by her and belonging to the estate.

Do the words " household furniture and furnishings " include the coal and wood of the decedent as above mentioned? In 27 Corpus Juris, page 934, the term " household furniture " is described as follows: " A comprehensive term which has as general a meaning as possible. It is incapable of a definition. It is capable only of a description. It is difficult to draw the line as between what is and what is not included in the term. The test seems to be whether the article is or is not used in or by the household, or for the benefit or comfort of the family. It comprises everything that contributes to the use or convenience of the householder or ornament of the house; everything in the house which is usually

enjoyed therewith, or contributes to the use, convenience, or ornament of the household * * *.". There are then enumerated various articles that have been held to be included within said term. I find no case of record where the matter in question has been passed upon. But the case of *Matter of Frazer* (92 N. Y. 239, 246) borders very closely upon the case at bar. In this latter case the decedent devised and bequeathed to his wife, " all of the household property in the dwelling-house." The court held that this bequest was broad enough to include the coal and wood provided for the use of the family. The record indicates that at the time of the decedent's death there were in an outhouse four tons of coal and four cords of wood, provided for family use. Also, in *Brinckerhoff* v. *Farias* (52 App. Div. 256, 263; affd., 170 N. Y. 427) a bequest of " all the rest of my plate and household effects " was held to include some wines in the decedent's house, which were sold for $426.40.

It is the duty of the court in construing the meaning of the words in question to give effect to the intent of the testator. If such intention is clear and manifest, it must control regardless of all rules to be applied in the construction of wills. (*Cammann* v. *Bailey*, 210 N. Y. 19, 30.) No evidence has been offered from which the intent of the testator as to the meaning of the words in question might be implied. As above mentioned, " household furniture " has been described as including, among other things, everything that contributes to the use or convenience of the household, and which is usually enjoyed therewith. In the absence of any evidence to indicate the intent of the decedent as to the meaning of the words in question, I believe that the decedent intended by the use of these words that his widow should have the right during her life, or until her remarriage, to use his household property in the same manner as he had been accustomed to use it during his lifetime, including the right to use any coal and wood that had been provided for household purposes. Unless such a construction is given to the meaning of these words, then this widow would not be justified in using any quantity of coal or wood remaining on the premises at the time of decedent's death, unless it was set aside to her by virtue of her right to the same under the statute providing for the widow's quarantine. I cannot believe that the testator thought that the words in question would so limit this bequest to his widow as to authorize his executor to remove from his premises the small quantity of wood and coal thereon provided for the use of his home, unless the widow should desire to purchase the same from the executor.

Counsel for the executor endeavors to distinguish the cases

of *Matter of Frazer* (*supra*) and *Brinckerhoff* v. *Farias* (*supra*) from the case at bar, by reason of the fact that in both of said cases the bequest of the property in dispute was absolute and not, as in the case at bar, for the use of the widow during her life or until her remarriage. The opinion of the court in either case would not seem to warrant such a distinction. In both of these cases the articles in question were held to be included in the language of the bequest, not because the bequest was absolute, but because the phraseology of the bequest was such as to persuade the court that the testator intended the articles in question to be included within the terms of the bequest. Whether a bequest is absolute, or only for the life of the beneficiary with remainder over, the test to be applied by the court in construing the meaning of such bequest, should be the same in either case, namely, the intention of the testator. Nor should the fact that the decedent did not give his widow a life use of the premises where he lived at the time of his decease change the construction of the words in question. In the event that the widow was unable to lease the premises formerly occupied by the decedent as his home, there can be no question of her right to remove the decedent's household furniture and furnishings elsewhere. Otherwise, the owner of the premises would have it in his power to prevent the widow from enjoying that which was bequeathed to her by her husband. The rule for determining the intention of the testator as to the meaning of the words in question should not be dependent upon whether the widow was also given the life use of the premises of the decedent. The gift over of the remainder of the property so bequeathed by the testator, upon the decease or remarriage of his widow, is not such a limitation upon the articles to be included in the words of the bequest as was held to exist in such cases as *Matter of Reynolds* (124 N. Y. 388); *Fenton* v. *Fenton* (35 Misc. 479, 485) and *Ludwig* v. *Bungart* (33 id. 177, 180). In all of these cases it was held that in the construction of a will when certain things are mentioned or enumerated in a bequest, followed in the same clause by a more general description, that description is taken to designate only things of a like kind with those mentioned or enumerated; and this is so, because it is presumed the testator had only things of that class in mind. The facts in the case at bar are not such that they necessitate the application of this rule of construction.

As the bequest in question includes the coal and wood of the decedent, the effect of such bequest is to make it absolute, and the limitation over upon the decease or remarriage of the widow is void. (*Gillespie* v. *Miller*, 5 Johns. Ch. 21; *Westcott* v. *Cady*,

Surrogate's Court, Clinton County, December, 1927.     [Vol. 131

Id. 334, 336; *Matter of Yates*, 99 N. Y. 94, 100.) The widow is, therefore, not chargeable for either the wood or the coal.

The decedent was admitted to the Champlain Valley Hospital in the city of Plattsburg, N. Y., on July 27, 1926. He died at six-twenty-five P. M. on August 2, 1926. The testimony of the attending physician, Dr. L. G. Barton, Sr., indicates that the decedent's condition changed for the worse on the afternoon of July thirtieth, when he started to run a temperature. On the morning of July thirty-first the attending physician and nurse were unable to arouse him, and he remained in a semi-stupor throughout that day until about seven o'clock that evening when he became apparently unconscious, and remained so until his death. The executor, one of the decedent's sons, testified that he saw the decedent during the forenoon of July thirtieth and that the decedent did not recognize him. Mrs. Marie Walker, a sister of the decedent's widow, testified that she saw the decedent for a short time on the afternoon of July thirtieth; that she just shook hands with him and spoke to him, and that he spoke to her; that she believed he recognized her. On July thirtieth, Mrs. Walker testified, Mrs. Robinson, the decedent's widow, told her that Mr. Robinson desired that she have her pay for money loaned by her to Mrs. Robinson. Mrs. Walker thereupon drew a check dated July 30, 1926, payable to Mrs. Henry Robinson for fifty dollars on the Plattsburg National Bank and Trust Company, Plattsburg, N. Y. This check was signed " Mrs. Henry Robinson " and was indorsed " H. W. Robinson, by Mrs. H. Robinson," and was cashed at the bank by Mrs. Robinson either on the afternoon of August second after the bank closed, or on August third. Mrs. Robinson testified that she used the proceeds of this check to pay her sister, Mrs. Walker, for a loan which her sister had made to her to pay decedent's expenses in connection with his last illness. Counsel for the executor produced another check dated July 16, 1926, payable to Mrs. Henry Robinson for fifty dollars, on the same bank, signed " H. W. Robinson " and indorsed " Mrs. Henry Robinson." Underneath this latter signature appears the name " Mrs. F. W. Walker." Mrs. F. W. Walker is the same person as Mrs. Marie Walker. Both Mrs. Walker and Mrs. Robinson testified that there had been but one loan of fifty dollars from Mrs. Walker to Mrs. Robinson. Mrs. Walker also testified that such loan was made by her about two weeks before the date of decedent's death. This latter check of July sixteenth was also made out by Mrs. Walker. Neither Mrs. Walker nor Mrs. Robinson could adequately explain why Mrs. Walker indorsed the check of July sixteenth but did not indorse the check of July thirtieth, which

latter check Mrs. Robinson testified was cashed by her for the purpose of repaying the loan from Mrs. Walker.   It would seem clear that if this latter check of July thirtieth was intended for the benefit of Mrs. Walker, it would have been made payable to her, or at least indorsed payable to her.   In fact, Mrs. Walker indicated that it was the check of July sixteenth which was intended to repay her loan, but Mrs. Robinson was under the impression that it was the check of July thirtieth that was intended to repay such loan. - Mrs. Robinson had no checking account at said bank at the time these checks were drawn.   Both checks were paid out of Mr. Robinson's checking account.   There is a failure of proof in regard to the purpose of drawing this check of July thirtieth. It was cashed very near the hour of decedent's death, if not after his death.   There is no proof that the proceeds of said check were used for the benefit of the decedent.   For this reason I believe Mrs. Robinson should be charged with the proceeds of this check, and should reimburse the estate for the amount thereof.

On August 1, 1926, Mrs. Robinson took a certificate of deposit, in the name of the decedent and issued by the above-mentioned bank, to said bank, which with the accrued interest thereon amounted to $757.12.   She cashed the same, retaining therefrom for her own use the sum of $240, and deposited the balance thereof, in the sum of $517.12, to the credit of the decedent's checking account.   It is clear from the testimony of Dr. Barton that at the time this transaction occurred the decedent was unconscious. No evidence of this transaction was given on the hearing in the matter.   There is no indication of the authority by which Mrs. Robinson completed this transaction, except that in the verified objections to the executor's account she states that " on or about the time mentioned," meaning, I assume, the date when the certificate was so cashed, the decedent requested her to do that which she did do.   Because there is no competent evidence to establish a gift by the decedent of this sum of $240 to Mrs. Robinson, I believe that she is chargeable for this sum and must reimburse the estate for the sum so received by her.

In view of the fact that the widow is improperly charged in the executor's account with the wood and coal, as above mentioned, and because the nature of the other questions arising in this matter were such as to merit a decision therein by this court, I believe that the widow is entitled to costs in this proceeding payable out of the estate, pursuant to section 278 of the Surrogate's Court Act.

Costs to be taxed and decree to be entered upon two day's notice to either party.   Prepare decree accordingly.