In the Matter of the Estate of JESSE WINBURN, Deceased.

Surrogate's Court, Westchester County, January 19, 1931.

*Henry R. Barrett* and *Townsend, Guiterman & Wilson*, for the executors.

*Dixson & Jeffery*, for the claimant Charles I. Ohrenstein Students' Association.

*M. S. & I. S. Isaacs*, for the legatee Olin Del Siens.

*Frederick H. Berges, Jr.*, special guardian.

SLATER, S.   In this account of proceedings, construction of two paragraphs of decedent's will is sought.

Jesse Winburn died on the 21st day of July, 1929, leaving a will duly admitted to probate in the surrogate's office of Westchester county on October 25, 1929.

The first question relates to the gift of $25,000 to the Charles I. Ohrenstein Students' Association of Syracuse, N. Y., a voluntary religious and charitable unincorporated association, the object of which has been to encourage, promote and advance the study, understanding and practice of the Christian Science religion.   It appears that on the 9th day of December, 1930, said association was duly incorporated under the Membership Corporations Law of the State of New York, and is now existing as a corporation incorporated for the purpose of carrying on pious or religious work as prescribed by the Christian Science church.   The gift to the association is included in the 6th paragraph of the will, which is as follows:

" *Sixth.* I give Fifty Thousand ($50,000) Dollars to the Christian Science Mother Church, the First Church of Christ, Scientist, Boston, Massachusetts; Twenty-five Thousand ($25,000) Dollars to the Christian Science Benevolent Association, 236 Huntington Avenue, Boston, Massachusetts; Twenty-five Thousand ($25,000) Dollars to the Christian Science Pleasant View Home, a corporation organized under the laws of New Hampshire; Twenty-five Thousand ($25,000) Dollars to the Christian Science Benevolent Association for Pacific Coast, a corporation organized under the laws of California; Twenty-five Thousand ($25,000) Dollars to the Emanuel Brotherhood, 309 East Sixth Street, New York, N. Y.; *Twenty-five Thousand ($25,000) Dollars to the Charles I. Ohrenstein Students Association, Syracuse, N. Y.;* Ten Thousand ($10,000) Dollars to the Society for the Prevention of Cruelty to Animals, Madison Avenue and Twenty-sixth Street, New York, N. Y.; and Five Thousand ($5,000) Dollars to the National Association of Audubon Societies, 1974 Broadway, New York, N. Y."

The will indicates that the decedent was a member of the Christian Science church.   By the 1st paragraph he directs that his funeral be conducted according to the rites of the Christian Science church, and the evidence produced by the affidavits of Charles I. Ohrenstein and Torrance Parker tell that the decedent had been a member of the First Church of Christ Scientist in Boston, Mass., since 1925, and as such member he subscribed to the tenets and the by-laws of the mother church; that he was a student of the Charles I. Ohrenstein Students' Association, having been taught in the

classes of such association of 1927, and that he voluntarily contributed toward the benevolent and charitable work of said association and regularly paid his dues and attended the regular meetings.

It is my opinion that the testator has declared his desire and purpose to make a religious gift, and that he evidenced a general charitable and religious intent to promote the spread of Christian ideas by the terms of his will in unmistakable language. One of the principal divisions of charitable trusts is the advancement of religion. (*Matter of Durbrow*, 245 N. Y. 469.) A gift for pious or religious purposes is essentially a charitable gift. (*Glover* v. *Baker*, 76 N. H. 393, 420; *Matter of Briglin*, 208 App. Div. 511.)

The testamentary intent not being obscure, the principle to be applied in the determination as to the validity and effect of the gift in question is well established. It is the duty of the court to carry out and effectuate the intention of the testator. This principle is to be upheld, even more strongly in favor of charitable trusts and bequests. (*Matter of Olmstead*, 131 Misc. 238, 242, and cases cited.) The intention to make a gift for religious purposes pervades the whole bequest, and the court will give it effect, if possible to do so. (*Matter of Durbrow, supra.*)

The affidavits show that the Students' Association is an unincorporated organization with certain religious activities and duties in connection with the Christian Science religion. It cannot be treated as a part of any Christian Science church because it is not allied with any one particular Christian Science church, nor with the mother church. It found its members throughout the country who had been taught the tenets of Christian Science religion by Mr. Ohrenstein. The association was formed and named in honor of him by his many students. Article 23 of the church manual of the First Church of Christ Scientist in Boston, Mass., says: " In its relation to other Christian Science Churches in its by-laws and self-government, the Mother Church stands alone; it occupies a position that no other Church can fill."

According to the early cases, the capacity of an unincorporated charitable or religious society to take a gift was well settled. When, however, the State strayed away from the English charity doctrine, a complete change took place. A gift to an unincorporated society was held to be void because the persons constituting its members are a fluctuating body unknown to the law, irresponsible to the courts, and incapable of receiving a gift over for purposes which the law denominates as charitable. Nor did it make any difference that the society acquired charitable rights after the will had become effective by the death of testator. A gift invalid at such time could not be validated by any action taken by the society.

A charter of incorporation thereafter taken was completely unavailing. (Zollmann Charities, § 367.) Unincorporated associations cannot hold the legal title to property, but property may be held in trust for them. (*Van De Bogert* v. *Reformed Dutch Church,* 219 App. Div. 220; 37 Yale Law Journal, 259.) The law of charitable uses has been restored. (*Matter of Davidge,* 200 App. Div. 437.)

There is no proof here that the Students' Association is a branch or part of any Christian Science church. It has a separate organization. Undoubtedly, it is a helper to the Christian Science churches, but not part of any. The testator made a distinct bequest to the mother church, the First Church of Christ Scientist, Boston, Mass., and to other Christian Science organizations. The authorities that sustain a gift to a branch or auxiliary go upon the theory that the deceased intended to name it as the legatee and in such a case the courts will not permit a legacy to be defeated by a misnomer.

The rule of law found in *Kernochan* v. *Farmers L. & T. Co.* (187 App. Div. 668; affd., 227 N. Y. 658); *Matter of Allen* (111 Misc. 93, 121; affd., 202 App. Div. 810; affd., 236 N. Y. 503) and cases cited cannot be applied to the instant case.

The court will endeavor to find a way of upholding the will. There is another road that will lead to the validity of the religious gift. The court will overcome the ruling in *Fralick* v. *Lyford* (107 App. Div. 543; affd., 187 N. Y. 524); *Ely* v. *Megie* (219 id. 112, 143) by invoking the principle of an *implied* charitable trust, to be carried out by the Supreme Court. The ruling in *Fisher* v. *Lister* (130 Misc. 1; affd., 222 App. Div. 841) did not extend beyond hold'ng the gift invalid because made to an unincorporated charitable association. The decision was spoken of as " regrettable " in 37 Yale Law Journal (1927–8), 259.

It is my opinion that the bequest did not fail and that it can be supported as a trust for religious purposes under the rule of law laid down in *Bowman* v. *Domestic & Foreign Missionary Society* (182 N. Y. 494); *Kingsbury* v. *Brandegee* (113 App. Div. 606); *Utica Trust & Deposit Co.* v. *Thomson* (87 Misc. 31, 46); *Matter of Reformed Episcopal Church* (98 id. 145 [Oct. 1916]). I have considered *Matter of Collier* (97 Misc. 543 [Nov. 1916]; affd., 179 App. Div. 950). In this case the gift was direct to the church, as was the gift in the *Reformed Episcopal Church* case. In my opinion, Judge HASBROUCK decided correctly. *Matter of Dubrow (supra)* is controlling. (*Matter of Kelley,* 138 Misc. 190 [Oct. 1930].)

It is said that the testator made no formal gift in trust. A gift in trust will be implied. (*Manley* v. *Fiske,* 139 App. Div. 665; affd., 201 N. Y. 546; *Matter of Durbrow, supra* [July, 1927].)

The evidence sufficiently indicates the religious and charitable purpose to which decedent desired to apply his bequest, and enables the Supreme Court, under the power derived from the statute,* to administer it as a trust for which a trustee is not named. This can be done through the instrumentality of a trustee appointed by the Supreme Court. If such course is deemed wise, the Supreme Court will doubtless be influenced in the choice of a trustee by the nature of the charity to be administered and may well appoint the Charles I. Ohrenstein Students' Association, now incorporated, as the medium best adapted to accomplish the end sought. In *Matter of Reformed Episcopal Church (supra)* the court found a conflict in decisions, but followed *Bowman* v. *Domestic & Foreign Missionary Society (supra)* because the words of gift were supplemented, as in the instant case, *by the evidence sufficiently* indicating the charitable purpose to which the testator desired to apply his bequest, to enable the Supreme Court to administer it as a trust. Judge HASBROUCK adopted the more liberal view which this court willingly follows, and held the gift valid as a trust for a religious purpose. The purpose of the charity can be carried out. It was a valid gift to public charity in its broad sense, to be administered by the court. The gift was marked as religious. To hold otherwise would be to permit the destruction of a broad charitable or religious bequest. It was a gift impressed with a public trust, and in the public interest. (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462, 472; *Matter of Mills*, 121 Misc. 147; *Graff* v. *Rayner*, 136 id. 297; *Graff* v. *Harrington*, 137 id. 712; *Graff* v. *Dunning*, Id. 715; Fowler Charitable Uses, Trusts & Donations, 110.) .

*Matter of Shattuck* (193 N. Y. 446) has been strictly confined to its own facts by later and better-considered cases. (*Butterworth* v. *Keeler*, 219 N. Y. 446, 450; *Matter of Frasch*, 245 id. 174, 182, 183; *Matter of Durbrow, supra*.)

A charitable trust will be implied to the gift and the bequest held valid, leaving it to the Supreme Court to appoint a trustee of the trust in order to carry out the general purposes of the bequest and the intention of the testator.

The other question of construction is a novel one. It relates to the meaning of "household effects," and the words are found in the 4th paragraph of the will as follows: "*Fourth.* I give to Olin Del Siena all my wearing apparel, jewelry and household effects, except paintings which at the time of my death are more than fifty years old."

This is followed by the 5th paragraph which gives to the wife of

---

* See Real Prop. Law, § 113: Pers. Prop. Law, § 12.

the beneficiary of the 4th paragraph the real property on Forest avenue, Rye, N. Y., " where I am now building a house which I intend to make my home." The construction relating to the 5th paragraph will be found in *Matter of Winburn* (136 Misc. 19).

The will does not speak as of the time of its execution but speaks as of the time of the death of the testator. The intention of the testator is to be determined from the language of the will as construed in the light of facts and circumstances.

The word " effects," standing alone, is a term nearly synonymous with " goods," which means personal property, and is sometimes sufficient to pass a testator's entire estate. As the word " effects " is ordinarily used, it is understood to mean goods, movables, personal estate. The word " effects " is comprehensive enough to include every article of personal property. For definition of " effects " see Bouvier's Law Dictionary (vol. 1, p. 975).

" Effects," as used in an act providing that all boarding-house keepers shall have a lien upon baggage and effects of guests, includes the *horse* of a boarder. (*Cross v. Wilkins*, 43 N. H. 332, 336.)

General Admiralty Rule No. 2* allows a warrant of arrest with a clause therein, if the defendant cannot be found, to attach as goods and chattels; or, if such property cannot be found, to attach as credits and *effects*. It was held that the word " effects " is of very extensive import and, as used in the rule, embraces *ships* and other tangible property. (*The Alpena*, 7 Fed. 361.)

A householder is the master or head of a domestic establishment. " Household goods " is a wider term than household furniture, including everything about the house that is usually held and enjoyed therewith and that tends to the comfort and accommodation of the household. It depends upon the testator's use of articles or effects. If by his use he has made them part of his household effects, they are such.

" Household goods," expressed in a will, will pass everything of a permanent nature that was used or purchased or otherwise acquired by the testator for his use. (2 Bouvier Law Dict. 1462.)

In the instant case the word " effects " is limited by the use of the word " household," which means *family* effects. A householder is one who keeps house; who maintains a domestic establishment; a case of domestic concern. (*Lafrinz v. Whitney*, 233 N. Y. 107, 112.) The bequest in this case was *limited* by the words of the will to those " customarily employed *as part of my household in my house in New York City.*" On page 112 the definition of the word " household " is given. (*People v. Tait*, 261 Ill. 197, 204.) The definition is broad enough to take articles *without* the home. So, in the instant case, the word " household " is used so as to carry

---

* See U. S. Code, tit. 28, § 723.

" effects " without the house. (*Dayton* v. *Tillou*, 1 Robt. 21; 24 N. Y. Super. Ct. 21.) The household may be a personal farm or ranch and effects are articles that are used therewith.

The land of the testator on Forest avenue extended from the avenue to Long Island sound. Between April, 1929, and the date of his death in July of the same year, the testator had erected on the property a bungalow dwelling of eleven rooms and a garage for three automobiles. At the time Mr. Winburn moved into the house, June 1, 1929, he installed in the garage a Lincoln limousine car which he had previously owned, and a new Ford sport roadster. At this time he purchased the motor boat and kept it moored as near to the shore as depth of water allowed. He had planned to build a wharf and boathouse. He used the motor boat for several trips to and from New York, and it was his intention to use it for commuting purposes. A saddle horse, King Richard, was owned by Mr. Winburn several years prior to his death and was used by him for riding. He kept him in a nearby stable. An affidavit submitted shows that these tangible properties were in use by the decedent for his benefit and comfort and for the convenience of the household.

It is contended by Mr. Del Siena, the legatee, that the motor boat, a thirty-two-foot " Banfield " cabin cruiser naphtha launch, the Lincoln limousine car, the Ford sport roadster, the saddle horse, saddle, bridle and harness, and a fur robe used in one of the automobiles, are household effects. These articles have been sold by the executors, the boat for $5,500, the limousine car for $2,000, the Ford for $250, the horse for $200, and the fur robe for $20, being claimed that they were part of the residuary estate and the proceeds of sale thereof are included in the cash balance shown by the account to be in the executors' hands. The objectant claims to be entitled to the payment of the sums of money received for these articles.

The early cases that deal with household effects are found in the English reports and textbooks (1 Jarman Wills, 709; 1 Roper & White Leg. 289). Of course, none of them have to do with automobiles or motor boats.

In *Arthur* v. *Morgan* (112 U. S. 495) the court held that " a *carriage* is peculiarly a family or household article. It contributes, in a large degree, to the health, convenience, comfort and welfare of the householder or of the family." This decision was followed in *Hillhouse* v. *U. S.* (152 Fed. 163), where the application of the same statute to an *automobile* was considered. It was held that the exemption in the law did apply to automobiles. In *Matter of Jones* (128 Misc. 244) this court held that two automobiles passed pursuant

to the phrase " personal effects." The recent English authorities have also held that " automobiles " are included under bequest of household " effects." (28 Halsbury's Laws of England, § 1332; *Matter of Howe*, Wkly. Notes, Nov. 14, 1908, p. 223; *Matter of Ashburnham*, [1913] 107 L. T. 601; *Matter of White*, L. R. [1916] 1 Ch. 172.)

The test as to what are " household effects " appears, in my judgment, to be whether the articles are or are not used in or by the household, or for the benefit or comfort of the family. It is the use to which a thing is put that is the determining factor. (2 Davids' New York Law of Wills, § 757, p. 1251; *Matter of Robinson*, 131 Misc. 21, 24.) This test has been applied to " household furniture." (*Matter of Kathan*, 90 Misc. 540, 544; *Brinckerhoff* v. *Farias*, 52 App. Div. 256, 263; affd., 170 N. Y. 427.)

This is not a case where the articles given are colored or cut down by the maxim *ejusdem generis* which limits the meaning of general words to things of the same class as those theretofore enumerated.

It was the evident intention of the testator to have the term " household effects " include everything contained on the property, except the paintings which at the time of his death are more than fifty years old.

A very strong evidence of intention as to " household effects " is the fact of his gift of the real property to his niece, wife of Olin Del Siena, the effect being to vest the entire domestic establishment in the husband and wife. There is no other contrary intent found in the will. The provisions of a will with respect to a legacy or bequest are given a broad or narrow construction in order to carry into effect the intent of the testator. (*Matter of Lowe*, 149 App. Div. 347; mod. and affd., 206 N. Y. 671; *Central Union Trust Co.* v. *Flint*, 198 App. Div. 703, 707.)

I shall give to the words " household effects " a broad and liberal construction, and hold that the articles contended for by the objectant passed under the 4th paragraph of the will.

I hold that the effects hereinbefore set forth, as claimed by the beneficiary of the 4th paragraph of the will, pass to him as household effects of the testator.

This opinion responds to the economic and social needs of our modern life — to contemporary conditions, social and industrial, of our community. We here compare the value of one social necessity of our period with another of olden times, and we shape the decision by the experiences of life. Chief Judge CARDOZO in his " Growth of the Law " said: " Justice itself which we want to appeal to as a test, as well as an ideal, may mean different things to different

minds at different times." And again, he said: " Decisions founded upon the assumption of a bygone inequality were unrelated to present day realities, and ought not to be permitted to prescribe a rule of life." This is a case where yesterday's opinions are given up for to-day's opinions. Times change, and so do ideas and opinions of judges to meet changing social conditions.

The executors are directed to pay to said beneficiary the amount of money received for the household effects contended for and sold by them and mentioned in the account as passing to the residuary legatees.

Submit decision in accordance with this opinion.